Argued August 1; decided October 7, 1895.

# NORTHERN COUNTIES TRUST v. SEARS.

(41 Pac. 931; 35 L. R. A. 188.)

STATUTES CONSTRUED—CONSTITUTION, ARTICLE IV, § 23.—A statute intended to apply to all the counties of a state, which provides for specified salaries of clerks and sheriffs of all counties in existence when it was introduced in the legislature, and states that these are in lieu of fees previously chargeable, is not rendered special or local, in violation of article IV, § 23, subd. 10, of the State constitution, by failing to provide any salary for those officers in a certain county which was created after the introduction of the bill, but the officers in that county are subject to the law although their salary is not fixed by it: *Manning* v. *Klippel,* 9 Or. 367, distinguished.

GENERAL APPLICATION OF STATUTE.—The act of February 22, 1893 (Laws 1893, p. 163), which was introduced seven days before, but became a law two days after, the act creating Lincoln County, and which provides that "each of the county clerks of the several counties in this State in which there exists such office shall receive a salary as follows"; that "the sheriffs of the several counties in this State shall receive an annual salary as follows"; that "it shall be the duty of the several clerks of the Circuit and County Courts of this State," etc.—is a general law, the provisions of which the clerk and sheriff of Lincoln County are bound to observe, although following the salary provision is a list of all the counties in the State, except Lincoln, with the amount of salary set opposite each county, and, though the act declares that the salaries "herein provided" for in favor of "said" county clerks and sheriffs shall be audited and paid in a certain manner, and that no one of "such" officials shall receive any other compensation. It is evident from the terms used in the act and from a consideration of the circumstances surrounding its introduction and passage (all which may be considered where the language used is ambiguous or of doubtful import: *Keith* v. *Quinney,* 1 Or. 364, cited), that this act was intended to be applied to every county in the State.

CONSTITUTIONAL LAW—LOCAL AND SPECIAL LAWS.—The act of February 22, 1893 (Laws 1893, p. 163), fixing the compensation of sheriffs, clerks and recorders, is not unconstitutional as in conflict with the State constitution, article IV, § 23, subd. 10, prohibiting local or special laws for the assessment and collection of taxes—assuming but not deciding that the fees provided by that act are taxes—for the act is applicable to every county in the State; and for the same reason is not in conflict with the State constitution, article IV, § 23, subd. 3, providing that no local law shall be passed regulating the practice in courts of justice.

STATUTORY CONSTRUCTION—FEES OF SHERIFFS.—Since the act of 1893 (Laws 1893, p. 163), as amended in 1895 (Laws 1895, p. 77), the sheriffs throughout the State are not entitled to collect fees except as in that statute provided.

TITLE OF AMENDATORY ACT—CONSTITUTION, ARTICLE IV, § 22.—
Independent acts, designed to accomplish distinct purposes, stand-
ing alone and depending on the force of their own provisions
to accomplish the desired objects, are not obnoxious to that
clause of the State constitution against amending or revising
statutes by mere reference to their titles, though their effect may
be to amend or modify by implication laws already in force:
*Warren* v. *Crosby,* 24 Or. 558, applied. Within the scope of this
rule, the act of 1893 on the subject of fees and salaries of certain
officers (Laws 1893, p. 163), is not in conflict with article IV, §
22, State constitution.

SUBJECT OF ACT—CONSTITUTION, ARTICLE IV, § 20.—The act of Feb-
ruary 22, 1893 (Laws 1893, p. 163), prescribing the compensation
of clerks, recorders, and sheriffs, providing for the appointment
of deputies, and for the payment of certain sums by litigants, does
not violate article IV, § 20, State constitution, to the effect that
every act shall embrace but one subject, since all its provisions
are germane to and properly connected with the one general
subject of compensation of certain officers.

REVENUE BILLS*—CONSTITUTION, ARTICLE IV, § 18.—A constitu-
tional provision that acts for raising revenue must have their
origin in the lower branch of the legislature does not apply to a
law providing for the exaction of certain fees from parties to
legal proceedings, although these are turned into the treasury
and the officers paid by salary. Such a law gives to the person
who pays the fees something in return other than is enjoyed by
the community at large, and which the person may take or not,
at his option; these are not acts for raising revenue.

JUSTICE WITHOUT PURCHASE—CONSTITUTION, ARTICLE I, § 10.—The
constitutional provision that "justice shall be administered openly
and without purchase" is not violated by a statute requiring pay-
ment of certain moderate fees by parties to legal proceedings,
although these are turned into the treasury, and the officers paid
by salary: *Bailey* v. *Frush,* 5 Or. 136, cited and applied.

From Multnomah:  E. D. SHATTUCK, Judge.

This is a mandamus proceeding by the Northern Coun-
ties Investment Trust, Limited, a corporation, against
Geo. C. Sears, as sheriff of Multnomah County, to compel
him as such officer to serve a summons upon the defend-
ants in a cause pending in the Circuit Court of the State
of Oregon for Multnomah County, wherein the Northern
Counties Investment Trust, Limited, is plaintiff, and
George H. Dedman et al. are defendants.  The mileage

*This case is reprinted in 35 L. R. A. 188, with a historical and
critical note considering what are such acts for raising revenue as
must originate in the lower branch of the legislature.—REPORTER.

fee for the service was paid to the defendant, but he refused to comply with the request of said plaintiff to serve such summons unless other fees were also paid to him in accordance with and as allowed by the act of October 26, 1882. After a full hearing the court below directed a peremptory mandamus to issue, commanding the defendant to forthwith serve the summons and papers in question without further compensation.

AFFIRMED.

For appellant there was a brief by *Messrs. Starr, Thomas & Chamberlain,* and *Julius C. Moreland,* with an oral argument by *Mr. Geo. E. Chamberlain.*

For respondent there was a brief by *Messrs. Snow & McCamant,* and *Milton W. Smith,* with oral arguments by *Messrs. Smith* and *Wallace McCamant.*

Opinion by MR. JUSTICE WOLVERTON.

The determination of the question brought up by this appeal involves the construction and constitutionality of an act entitled "An act to change in part the compensation and mode of payment thereof to the county clerks, recorders of conveyances, clerks of the Circuit Courts and County Courts in the State, and of the sheriffs of the several counties; to repeal certain provisions of statute providing for the payment of certain fees to said officers, and of trial fees in certain cases; to provide for the payment by parties to appeals, actions, suits, and proceedings of certain sums to assist the State and the several counties in defraying expenses consequent upon the administration of justice; to provide for the appointment of deputies for the various offices above enumerated in certain cases, and for their compensation, and for the payment to the State and several counties of sums of money and fees paid to

said officers by parties litigant," filed in the office of the secretary of state February 22, 1893, and an act amendatory thereof approved February 25, 1895. For the purposes of this inquiry the two acts are essentially the same, and what is predicated of the one might generally be predicated of the other. They will, therefore, be treated as one act, except in so far as it is necessary to note distinctions touching their relative provisions, or the surrounding circumstances attending their adoption. It is contended that the act of February 22, 1893, is unconstitutional because:—First, it is in conflict with article IV, section 23, subdivision 10, of the State constitution, which provides that the legislative assembly shall not pass local or special laws for the assessment and collection of taxes for state, county, township, or road purposes; second, it is a local law "regulating the practice in courts of justice," contrary to article IV, section 23, subdivision 3, of the State constitution; third, it is in violation of article IV, section 22, of the State constitution, which provides that "No act shall ever be revised or amended by mere reference to its title, but the act revised or section amended shall be set forth and published at full length"; fourth, the act treats of several distinct and unconnected subjects, contrary to article IV, section 20, of the State constitution, which provides that "Every act shall embrace but one subject, and matters properly connected therewith, which subjects shall be expressed in the title"; fifth, it is an act for raising revenue, and originated in the senate, in contravention of article IV, section 18, of the State constitution, requiring that bills for raising revenue shall originate in the house of representatives; and sixth, it contravenes article I, section 10, of the State constitution, which requires that "Justice shall be administered openly and without purchase."

The act provides for a fixed salary for the clerks, sheriff, and recorder in each of the counties of the State.

with the exception of Lincoln, and it is claimed that this omission is fatal to the act, under *Manning* v. *Klippel*, 9 Or. 367. A proper construction of the act will determine whether or not it comes within the doctrine of that case. As to whether or not the fees which the several officers are required to collect and turn over to the county treasurer are taxes, within the meaning of article IV, section 23, subdivision 10, of the constitution, it is unnecessary for the court to decide at the present time. But if it be conceded that they are taxes, within the meaning of that clause, it does not follow that the act is local, and therefore void. Section 1 thereof provides that "Each of the county clerks of the several counties in this State in which there exists such office shall receive a salary as follows," then follows a list containing the names of all the counties except Lincoln, with the amount of the salary set opposite each county in said list. Section 2 relates to clerks of the Circuit and County Courts chosen in counties where such offices exist separate from the office of county clerk. Section 3 relates to recorders of conveyances. Section 4 provides that "The sheriffs of the several counties in this State shall receive an annual salary as follows." Then follows a list of the counties, with the amount of salary set opposite, Lincoln County being omitted. Section 5 provides that "The salaries herein provided for in favor of said county clerks, recorders of conveyances, clerks of the Circuit and County Courts, and sheriffs, shall be audited and paid by the several counties to the respective parties entitled thereto, in monthly payments, and in the same manner that other county charges are paid; and no one of such officials shall be entitled to receive any fees or other compensation for his services than as above provided, and except as hereinafter provided, except for furnishing to private parties copies of the records and files in his office for their benefit and convenience, in which case he shall be

entitled to charge such private parties therefor at the rate
of ten cents a folio, but shall not be entitled to anything
for authenticating such copies, beyond including the num-
ber of words contained in the certificate of authentication
in his computation of the number of folios." Section 6
provides, in effect, that "The sheriffs of the several coun-
ties in the State shall be entitled to receive the same com-
pensation now allowed by law for the board and keeping
of prisoners confined in the county jail of his (their)
county." They shall be entitled to any reward offered for
the apprehension of persons charged with crime, and to
receive from the State the fees now allowed by law for
transporting convicts to the penitentiary, and insane and
idiotic persons to the asylum. They shall also be entitled
to claim from the plaintiff or moving party in any action
or proceeding such reasonable sums of money as they
may have been compelled to pay or incur on account of
the care of property in their custody under attachment,
execution, etc.; and where they are required to travel
into another county or state to make an arrest or receive
a prisoner, they shall receive their actual or necessary ex-
penses incurred. By the amendment of February 25,
1895, three provisions are added, all applicable to counties
of more than 50,000 inhabitants, but none other. The
first provides for letting the board of prisoners to the
lowest bidder; the second requires the payment of fees
received from the State for conveying convicts to the
penitentiary and insane to the asylum to be paid into the
county treasury, and the payment by the county of the
actual expenses incurred; and the third is as follows:
"Provided further, also, that in counties containing more
than 50,000 inhabitants the sheriff shall be entitled to
receive all mileage for serving process or papers in civil
cases, but shall not receive any mileage in criminal cases
whatever, or on executions in civil or criminal cases."

Section 7 provides that the "Coroners of the several counties shall also be entitled to the same fees now allowed for the performance of service in an action, suit, or proceeding where the sheriff is a party, and the party paying the same shall be entitled to recover the amount paid from the adverse party." Section 8 provides that "It shall be the duty of the several clerks of the Circuit and County Courts in the State at the time any suit, action, or proceeding for the enforcement of private rights, including appeals and writs of review, but not proceedings in probate matters, is instituted to exact from the plaintiff or moving party in such suit, action, or proceeding, the sum of $5. * * * Such clerk shall also, at the time of filing any answer, demurrer, or motion in any such action, suit, or proceeding upon the part of such defendant, exact from such defendant the sum of $3, * * * and * * * shall also exact from such plaintiff or moving party at the time such suit, action, or proceeding comes on for trial or hearing upon a question of fact or law involved therein, unless referred to a referee, and except upon demurrer, an additional sum of $12. * * * And every such clerk, upon receiving any money as provided in this section, shall immediately pay the same over to the county treasurer of his county, and take his receipt therefor." The amendment of 1895 enlarges the fees above provided for, where the amount in controversy is above $500; and reduces the trial fee in all cases to $2. It also provides for the payment of a fee in probate proceedings. Section 9 provides that "The several sums required to be paid by parties litigant to the respective officials on appeals, actions, suits, and proceedings, as provided for in the two preceding sections of this act, are intended to be in lieu of the fees such parties have heretofore been required to pay said officials in such matters and also in lieu of the trial fee such parties were prior to the adoption of this act

required by law to pay, and no such fees or trial fee last referred to shall be exacted from such parties in such cases. In all other cases, however, in which fees are allowed to county clerks, recorders of conveyances, clerks of the Circuit and County Courts, and sheriffs in civil matters, including fees in probate proceedings, it shall be the duty of the said officials respectively to exact and receive from the parties required by law to pay the same,  \*  \*  \*  which fee shall, upon the day it is paid to the official, be paid over by him to the county treasurer of his county." This section, as amended by the act of 1895, reads as follows: "The several sums required to be paid by the parties litigant to the clerk of the Circuit or County Court in appeals, actions, suits, and proceedings as provided for in the two preceding sections of this act, are to be in lieu of all the fees such parties have heretofore been required to pay to clerks, sheriffs, and all other officials in such matters, and the trial fee provided for in the preceding section of this act shall be in lieu of the trial fee such parties were, prior to the adoption of this act, required by law to pay, and no such fees or trial fee last referred to, or any other fee, shall hereinafter be exacted from the parties in any suit, action, or proceeding."

The provisions of this act are thus fully set forth that its scope and purpose may be readily comprehended. In the inquiry as to the intention of the legislature, where the language employed is of doubtful signification or import, we are permitted to consider the surrounding circumstances attending the adoption of the act. "The true meaning of any passage," says Mr. Endlich in his work on Interpretation of Statutes, § 27, "is to be found, not merely in the words of that passage, but in comparing it with every other part of the law, ascertaining also what were the circumstances with reference to which the words were used, and what was the object appearing from those cir-

cumstances, which the legislature had in view, and what were the cause and occasion of the passage of the act, and the purpose intended to be accomplished by it, in the light of the circumstances at the time, and the necessity of its enactment." See also section 28, and *Keith* v. *Quinney*, 1 Or. 364. The act of 1893 was introduced in the senate on January 11, and the act creating Lincoln County was introduced in the same house January 18, seven days later, but the latter act became a law and took effect two days prior to the passage of the former. However, it is apparent that when the act under consideration was drafted and introduced it provided a salary for the clerk and sheriff of every county in the State, and it is reasonable to suppose that the fact that Lincoln County had been created was overlooked in its final passage, otherwise it would have been added by way of amendment. But, be this as it may, and if connected with the further fact that the legislature amended the act at a subsequent session and again omitted Lincoln County, it is nevertheless manifest that the legislature intended to provide a salary for all the clerks and sheriffs in every county in the State, and the fact only remains that it did not do so. These facts and attendant circumstances are adverted to, not that they will in any event warrant the court in construing the act in the slightest degree different from what the language imports, but because they enable us to ascertain what was meant by the legislature, the language employed by it being ambiguous and of doubtful significance. Were it not for the fact that salaries were fixed for the clerks and sheriffs of all the other counties in the State except Lincoln, and the provisions of section 5, which declare that "the salaries herein provided for in favor of the said county clerks, recorders of conveyances, clerks of the Circuit and County Courts, and sheriffs shall be audited," and "no one of such officials shall be entitled to receive any fees or compensation for

his services than as above provided," which leave the impression that the legislature was dealing with the clerks and sheriffs only in the counties named, and not with the clerks and sheriffs of all the counties in the State, there could scarcely be any question made as to the correct interpretation of the act.

The general tenor of the language employed indicates very clearly that the legislature was dealing with the clerks and sheriffs of all the counties of the State, without excepting any from its purview, which, taken in connection with the evident legislative belief that all were included in the list of salaries affixed, leaves no doubt as to its correct interpretation.   To illustrate:   Section 1 provides that "each of the county clerks of the several counties in this State in which there exists such office shall receive a salary as follows"; section 4, that "the sheriffs of the several counties in this State shall receive an annual salary as follows"; section 6, that "the sheriffs of the several counties in the State shall be entitled to receive," etc.; and section 8, "It shall be the duty of the several clerks of the Circuit and County Courts in the State."   These and other clauses that may be noted all indicate general legislation with the purpose of affecting all clerks and sheriffs of the State alike, and such is the effect of the act.   The legislature has simply omitted to fix a salary for the clerk and sheriff of Lincoln County, but they are not less bound to the observance of the provisions of the act than the other clerks and sheriffs of the State.   The act is therefore not local, and does not contravene the provisions of subdivision 10, section 23, article IV, of the State constitution.   This also disposes of the counsel's second contention, that it is a local law regulating the practice of courts of justice contrary to subdivision 3, section 23, article IV, of our constitution.

Another question in this connection.   The view is ad-

vanced that under section 9 the sheriffs in all the counties are required to collect from litigants the fees prescribed by the law of 1882, which formerly obtained for the performance of similar duties.    The wording of the first clauses of section 9 is peculiar, and their meaning not entirely clear.    They provide that "the several sums required to be paid by parties litigant to the respective officials in appeals, actions, suits, and proceedings, as provided for in the two preceding sections of this act, are intended to be in lieu of the fees such parties have heretofore been required to pay such officials in such matters."    The legislature has, however, by the amendatory act furnished us with its own interpretation of these clauses as follows: "The several sums required to be paid by the parties litigant to the clerk of the Circuit or County Court in appeals, actions, suits, and proceedings, as provided for in the two preceding sections of this act, are to be in lieu of all the fees such parties have heretofore been required to pay to clerks, sheriffs, and all other officials in such matters."    This is the most reasonable construction of the ambiguous clauses in section 9 of the act of 1893, above referred to, and is but a legislative declaration as to their proper meaning and interpretation.    Sheriffs are therefore not required to collect from litigants fees provided for, by the act of 1882, except such as the act now under consideration permits and directs.    .

Does the act of 1893 contravene section 22, article IV, of the State constitution, which provides that "No act shall ever be revised or amended by mere reference to its title, but the act revised or section amended shall be set forth and published at full length"?    The purpose and effect of this clause of the constitution has received extended and intelligent consideration at the hands of Lord, C. J., in *Warren v. Crosby*, 24 Or. 558 (34 Pac. 661), a recent case, and, if applicable here, it is decisive of this case.    It was there

established that "Statutes not amendatory or revisory in
character, but original in form, and complete within them-
selves, exhibiting on their face their purpose and scope,"
do not come within the purview of this clause of the consti-
tution, even though they may amend or modify existing
laws upon the same subject by implication.    The-act under
consideration in *Warren* v. *Crosby* had the effect to transfer
the power to collect and assess taxes, conferred on the
incorporated towns and cities of the State by their respect-
ive charters, and also upon the different school districts by
law, to the county officers designated therein, and there-
fore was amendatory by implication of all the city charters
of the State, as well as the statutes regulating the assess-
ment and collection of taxes by school districts within the
State.    It was, however, an independent act, designed to
accomplish an independent and distinct purpose, standing
and depending alone upon the force of its own provisions
for the accomplishment of the object it sought to obtain.
Its scope and purposes were distinctly defined and declared
within itself, and upon its face it did not seek or purport
to revise or amend any known law, and hence it was held
to be a valid enactment under the constitution.    The act
under consideration is of the same nature.    True, the
title of the act purports to change in part "the compensa-
tion, mode of payment," etc., of certain public officers, and
"to repeal certain provisions of statute," but the act itself
accomplishes the object of its enactment by force of its
own terms and provisions, and its scope and purposes are
perfectly manifest upon the face of it.    It does not pur-
port to revise or amend any section of the statute, or any
previous enactment of the legislature, and it is none the
less an original and independent act if its extraneous oper-
ation does affect other statutes.    The limitation imposed
by the constitution is not upon the power of the legisla-
ture to make laws, but upon the mode in which that

power should be exercised in the enactment of amendatory or revisory laws, and was intended to prevent the amending or revising of existing statutes or previous enactments by substituting one phrase for another, or by inserting a sentence, or by repeating or striking out a sentence or a part of a sentence, which would in and of themselves convey no meaning, but would depend for their operation and effect upon a proper interpolation, substitution, or elimination in comparison with the original statute or enactments:    *Warren* v. *Crosby,* 24 Or. 558 (34 Pac. 661).

It is next contended that "this act provides salaries, levies taxes, and provides for the appointment of deputies, and all three subjects are expressed in the title," and that neither the act nor the title of the act is single, but embraces more than one subject, contrary to the requirements of section 20, article IV, of the constitution above quoted.    We are required to look to the body of the act and the provisions therein contained for the ascertainment of the subject-matter.    The title is of but little importance, except to index and fairly indicate the subject of legislation.    Matters germane to or properly connected with the subject or matters of detail have no place in the title, although the circumstance of their being found there affords no constitutional reason for rendering the act void or inoperative:    *People* v. *McCann,* 16 N. Y. 58 (69 Am. Dec. 645); *State* v. *Silver,* 9 Nev. 231.    The object of this clause of the constitution, so far as the objection here made to the act is concerned, is to prevent the combining of incongruous matters and objects totally distinct and having no connection nor relation with each other in one and the same bill, as well as to discourage improper combinations by the members of the legislature which would secure support for a bill of an omnibus nature with discordant riders attached, which, if acted upon singly, would

neither merit nor receive sufficient support to secure their adoption. In short, as expressed by Mr. Cooley in his work on Constitutional Limitations, § 173, it was "to prevent hodge-podge, or log-rolling legislation." The provisions of the act under consideration tend to but one general object, that is, to prescribe the compensation and duties of county clerks, recorders of conveyances, clerks of the Circuit and County Courts, and sheriffs of the several counties in the State, and they are all germane to and properly connected with this one general head. The act of October 25, 1880, which the court had under consideration in *Manning* v. *Klippel*, 9 Or. 367, was of the same nature, and similarly entitled; and it was then thought the act was valid under this clause of the constitution. We think the objection of counsel here made is not well taken, and that the act contains but one general subject of legislation.

The next objection made is that the act under consideration is one for raising revenue, and originated in the senate, contrary to the requirements of section 18, article IV, of the State constitution. This proceeds again upon the assumption that the fees which are required to be paid to the officers named in the bill, and which are to be turned into the county treasuries, are taxes. Whether this assumption is right or wrong we do not decide, but, if it be conceded that the assumption is well founded in law, non constat that the act is one for raising revenue. Bills for raising revenue are required to have their origin in the lower branch of the legislature because it is the more numerous of the two bodies, and, being oftener renewed by elections, presumptively it more closely and directly represents the people: Cooley on Constitutional Limitations, § 157. The controlling feature which characterizes bills of this nature, says Johnson, J., is that they "impose taxes upon the people, either directly or indirectly, or lay duties, imposts, or excises, for the use of the government,

and give to the persons from whom the money is exacted no equivalent in return, unless in the enjoyment, in common with the rest of the citizens, of the benefit of good government": *United States* v. *James*, 13 Blatch. 207 (Fed. Cas. 15464). This case was instituted to test the validity of an act of congress increasing the rate of postage upon third-class matter, under the national constitution, providing that "all bills for raising revenue shall originate in the house of representatives," and it was further observed by the court that "a bill regulating postal rates for postal service, provides an equivalent for the money which the citizen may choose voluntarily to pay. He gets the fixed service for the fixed rate, or he lets it alone, as he pleases, and as his own interests dictate," and hence it was concluded that the bill was not one for raising revenue. Mr. Story, in discussing this clause of the national constitution, says "the history of the origin of the power already suggested abundantly proves that it has been confined to bills to levy taxes in the strict sense of the words, and has not been understood to extend to bills for other purposes, which may incidentally create revenue": Story on the Constitution, § 880. And this is the trend of subsequent decisions of the national courts touching the construction of this clause of the constitution: See *United States* v. *Norton*, 91 U. S. 569; *United States* v. *Hill*, 123 U. S. 684 (8 Sup. Ct. 308); *United States* v. *Broadhead*, 127 U. S. 212 (8 Sup. Ct. 1194); *The Nashville*, 4 Biss. 188 (Fed. Cas. 10023); and *Dundee Mortgage Co.* v. *Parrish*, 24 Fed. 200.

In *The Nashville* the court say: "It is certain that the practical construction of the provision by congress has been to confine its operation to bills, the direct and principal object of which has been to raise revenue, and not as including bills out of which money may incidentally go into the treasury, or revenue incidentally arise." DEADY, J., in *Dundee Mortgage Co.* v. *Parrish*, 24 Fed. 200, says:

"A bill for raising revenue, or a 'money bill' at is was techically called at common law, is a bill levying a tax on all or some of the persons, property, or business of the country, for a public purpose; and the assessment or listing and valuation of the polls or property preliminary thereto, and all laws regulating the same, are merely measures to secure what may be deemed a just or expedient basis for the levying of a tax or raising a revenue thereon." This was predicated of the "mortgage tax" law which formerly prevailed in this State. In *Mumford* v. *Sewall*, 11 Or. 67 (50 Am. Rep. 562, 4 Pac. 585), which involved an investigation of that law with reference to its validity under the same clause of our State constitution, this court did not feel warranted in declaring it unconstitutional, because it was not sufficiently clear that a law which merely declared that certain property theretofore exempt should thereafter be subject to taxation was strictly a law for raising revenue. Considering the similarity of the state and national constitutions touching bills for raising revenue, and the high and unbroken line of authority upon the proper construction of the latter, it is certainly a very persuasive and weighty argument for applying the same construction to the former. The very cogent reasoning employed undoubtedly has application here, and impels us to the same conclusion touching our own State constitution. A law which requires a fee to be paid to an officer, and finally covered into the treasury of a county, for which the party paying the fee receives some equivalent in return, other than the benefit of good government, which is enjoyed by the whole community, and which the party may pay and obtain the benefits under the law, or let it alone, as he chooses, does not come within the category of an act for raising revenue, and hence the objection made under this clause of the constitution is not well taken.

Lastly, it is contended that the act is in violation of

section 10, article I, of the State constitution, requiring that "justice shall be administered openly and without purchase." The idea of justice as contained in this clause of the constitution was first promulgated by the Magna Charta, and the reasons which led up to the declaration will serve us in construing the clause. In the days of the ancient kings of England, justice was a thing of commerce, and was avowedly bought and sold. The king's court, the supreme judiciary of the kingdom, was open to none who came not with presents to the king. Bribes were openly given for the expedition, delay, suppression, and for the preservation, of justice. The barons of the exchequer, the first nobility of the kingdom, were awarded money in exchange for fair dealing, for preserving liberties under the king's charter, for helping to recover debts, for permission to make defenses, for "free law," and the like. To prevent and overthrow this barbarous and shameless practice of the times, it was stipulated in the Great Charter that "to none will we sell, to none will we deny or delay right or justice": *Harrison* v. *Willis,* 7 Heisk. 46 (19 Am. Rep. 604). The long-fixed meaning of these words is that the right—attainment of justice—the end of the law—must be administered without sale. Original process must issue without price, except what the law fixes, and without denial, though the defendant be a favorite of the king, or the government who interferes in his behalf, and must be proceeded with by the judges after suit instituted, without delay by themselves, or by order of the king, and that proper judicial process must issue by the judges without fee or reward, except that fixed by the law: *Townsend* v. *Townsend,* Peck. (Tenn.) 15 (14 Am. Dec. 722). This court has already construed the clause in question in *Bailey* v. *Frush,* 5 Or. 136. BONHAM, J., speaking for the court, says: "We hold that the language of our constitucion * * * means simply that justice

shall not be bought with bribes, nor shall the attendant or incidental expenses of litigation, in the nature of costs and disbursements, be so exorbitant and onerous as to virtually close the doors of courts of justice to those who may have occasion to enter there.   In other words, that the rights of the poor man to a redress of his grievances shall be equally respected with those of the rich, and that equal and exact justice shall be dealt out alike to all." The requirements of this act, as they relate to the fees and charges to be paid by litigants and others, do not impinge nor intrench upon the constitution as thus interpreted. These conclusions affirm the judgment of the court below, and it is so ordered.

Affirmed.

Decided November 4, 1895.