Argued 80 October, decided 20 November, 1899.

## STATE EX REL. *v.* FRAZIER.

[59 Pac. 5.]

1. Constitutional Law—Subject of Act in Title.—The act of 1899 relating to fees of certain officers in counties of more than fifty thousand inhabitants (Laws, 1899, p. 140) is not unconstitutional because its title indicates that it applies to the whole state, while the text limits it to a certain class of counties. The purpose and subject-matter are sufficiently expressed in the title, as required by the Oregon Constitution, Article IV, § 20.

2. Regulating Practice in Courts of Justice.—An act providing for the payment of certain clerks', sheriffs', and trial fees in certain counties (Laws, 1899, p. 140) is not an act regulating the practice in courts of justice, under the Constitution of Oregon, Article IV, § 23, subd. 3, since it does not affect the manner or order of conducting the business of the courts.

3. "Tax" Defined.—The word "taxes," as used in the Oregon Constitution, Article IV, § 23, subd. 10, prohibiting special or local laws for the assessment or collection of taxes for certain purposes, means a charge or pecuniary burden imposed upon an individual or his property for the support of the general government, or for some special purpose for which the state may make requisition in a particular mode.

4. Local Law for Assessment of State and County Taxes.—An act providing for the payment of certain court fees to certain officers in all counties having more than a stated population, and providing for the payment to the state and several counties of such sums of money so paid said officers by litigants, and providing for the payment of the salaries of all county officers (Laws, 1899, p. 140) is not an act for the assessment and collection of taxes for state, county, or township purposes, within the meaning of the Oregon Constitution, Article IV, § 23, subd. 10: *Manning* v. *Klippel*, 9 Or. 367, distinguished; *Northern Counties Trust* v. *Sears*, 30 Or. 388, followed.

5. Special Privileges and Immunities.—Nor does such an act (Laws, 1899, p. 140) grant to certain citizens privileges and immunities not belonging to all citizens, since it affects alike all persons under the same circumstances and conditions, and hence is not in violation of the Oregon Constitution, Article I, § 20, providing that no law shall be passed granting to any citizen, or class of citizens, privileges or immunties which, upon the same terms, shall not equally apply to all citizens: *Re Oberg*, 21 Or. 406, applied.

From Multnomah : Arthur L. Frazer, Judge.

Proceedings by the state, on relation of R. F. Bell, against William Frazier, as Sheriff of Multnomah County, for mandamus to compel defendant to serve a summons in an action brought by the relator against one Grimes in the circuit court of that county without the fees required by the act of February 18, 1899, being first paid (Laws, 1899, p. 140), and the only question for consideration is the constitutionality of such act. Section 1 thereof provides that it shall be the duty of the sheriff, in all counties of the state containing more than fifty thousand inhabitants, to exact, for the use of the county, in all civil suits, actions, or proceedings, certain fees and charges as set forth. Section 2 makes it the duty of the several clerks of the circuit and county courts of the state, at the time of the commencement of any suit, action, or proceeding for the enforcement of private rights, to exact from the plaintiff or moving party the sum of $10 in all cases where the amount in controversy exceeds $500, and $5 in all cases where the amount in controversy is less than that sum, except in probate proceedings, when $10 shall be required to be paid before the filing of any petition therein; and no complaint, transcript on appeal, petition for writ of review, or any of the instances in probate proceedings mentioned, shall be filed until such payment has been made. The clerks are also required, at the time of filing any answer, demurrer, or motion in any action, suit, or proceeding upon the part of a defendant, to exact from him the sum of $5 in all cases where the amount in controversy exceeds the sum of $500, and $3 in all cases where the amount in controversy is $500 or less, except in probate proceedings, where he shall be required to pay the sum of $5. And they are further required to exact from the plaintiff or moving party, at the time the suit, action, contest, or proceeding comes on for final trial or hearing on questions of fact

and law, when tried by the court, the sum of $2, which must be paid before any trial shall be had ; and, in case of a jury trial, the sum of $12 a day for each and every day the jury shall be engaged in the trial, to be paid in advance each day before proceeding therewith. Section 3 provides a fee of ten cents a folio for furnishing private parties a copy of the records and files in any of the county offices, which shall be paid into the county treasury as other fees are required to be paid. Section 4 provides that the sums required to be paid by the parties litigant to the clerks of the circuit and county courts and sheriff, as provided in the preceding sections, shall be in lieu of all the fees which the parties have heretofore been required to pay, and no other fees than those recited shall hereafter be exacted from the parties to any action, suit, or proceeding. Section 5 makes it the duty of the clerks of the circuit and county courts, sheriff, recorder of conveyances, and justices of the peace in counties of more than fifty thousand inhabitants to keep a fee book, in which shall be entered all items of service performed, and fees, percentages, commissions, charges, etc., which shall be a public record ; and each of such officers is required on or before the first day of each month to deposit with the county treasurer all sums collected during the previous month, taking his receipt therefor. Section 6 makes it the duty of the county auditor to check up the sums collected by the several county officers and deposited with the treasurer, and make a report of his findings to the board of county commissioners on the first day of each month, and before the salaries of such officers are paid. Section 7 provides that the salaries of all county officers shall be paid by warrant drawn on the county fund in pursuance of an order of the board of county commissioners, the same as other claims are paid, and that they shall receive no other compensation for

their services ;  and provides further that none of the provisions of the act shall apply to counties containing less than fifty thousand inhabitants.   Section 8 repeals all laws and parts of laws in conflict therewith, and contains an emergency clause.   The circuit court sustained a demurrer to the alternative writ, holding the act to be constitutional, and hence this appeal.        AFFIRMED.

For appellant there was a brief over the names of *Robert F. Bell in pro per.*, and *Reed & Hogue*, with an oral argument by *Mr. Sanderson Reed*.

For respondent there was a brief over the name of *Paxton, Beach & Simon*, with an oral argument by *Mr. O. F. Paxton*.

MR. JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

The contention for the plaintiff is that the act is void, because (1) the title does not express the subject thereof, and therefore contravenes the Oregon Constitution, Article IV, § 20 ;  (2) it is a local law, regulating the practice in courts of justice, and providing for the assessment and collection of taxes for state and county purposes, and is void under the Oregon Constitution, Article IV, § 23 ; and (3) it is a law granting to certain citizens privileges and immunities not belonging to all citizens, and is therefore violative of Article I, § 20, of the constitution.   Of these objections in the order named.

1.   It is entitled ''An act providing for the payment of certain fees to the recorders of conveyances, clerks of the circuit courts and county courts in the state, and to sheriffs in certain counties, and for the payment of trial fees, and providing for the payment to the state and several counties of sums of money and fees paid to said

officers by parties litigant and others ; and providing for
the manner of payment of salaries of county officers,''
which, in our opinion, sufficiently expresses the purpose
and subject-matter of the law within the doctrine of the
previous decisions of this court : *O'Keefe* v. *Weber*, 14 Or.
55 (12 Pac. 74) ; *David* v. *Water Com*. 14 Or. 98 (12 Pac.
174) ; *State* v. *Shaw*, 22 Or. 287 (29 Pac. 1028) ; *State*
v. *Koshland*, 25 Or. 178 (35 Pac. 32) ; *State* v. *Linn County*,
25 Or. 503 (36 Pac. 297) ; *Northern Counties Trust* v. *Sears*,
30 Or. 388 (41 Pac. 931, 35 L. R. A. 188). It has been
repeatedly held that the section of the constitution here
invoked is not directed against the generality or compre-
hensiveness of the title of legislative enactments, nor does
it require that such title shall index the details thereof.
If all the provisions of the law relate, directly or indi-
rectly, to the same subject, and are not foreign to the
subject expressed in the title, it will not be held uncon-
stitutional. The object of the constitutional provision is
to prevent the blending of incongruous subjects in the
same act, using the title as a deception, and to prevent
combining subjects representing divers interests in one
act in order to unite the members of the legislature who
favor either in support of all. There has been a general
disposition manifested in the cases cited to construe the
constitution liberally, rather than to embarrass legislation
by a strict construction. The contention in this particu-
lar case seems to be that the title of the act is general,
and indicates that it was intended to apply to the whole
state, while in the body it is limited to the class of coun-
ties containing more than fifty thousand inhabitants, and
therefore the subject is not properly expressed in the title,
because it does not indicate the limit of the operation of
the act. A question quite similar to this was considered
and decided adversely to plaintiff's contention in *Neuen-
dorff* v. *Duryea*, 69 N.Y. 557 (25 Am.Rep. 235). The Consti-

tution of New York at that time provided that "no * * * local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title :" Article III, § 16.   The legislative assembly passed an act prohibiting public dramatic entertainments on Sunday in the City of New York alone, the title of which was "An act to preserve the public peace and order on the first day of the week, commonly called Sunday."   It was contended that it was void, because local, while the title indicated that it was a general act. But the court held that, although it was a local law, the objection was not well taken, and in deciding the case said : "The title of the act is, 'An act to preserve the public peace and order on the first day of the week, commonly called Sunday.'   It will be seen that it is broad enough in its language to apply to the whole state.   This, however, is not enough, alone, to determine that it is improper.   If it meets the conceded purpose of the constitution it is correct : *People* v. *Briggs*, 50 N. Y. 553.   That purpose has been repeatedly declared to be: First, to prevent the union in one title of several local projects, or the attaching of some local project to a general subject, or *vice versa* ;   and, second, by the title, to give information to all concerned in the subject of the act that that subject is likely to be affected by pending legislation.   It is plain that the first part of this purpose is met.   There is in this act but one local subject.   Is not the second part also met? The title is broad enough to indicate legislation in regard to the public peace and order on Sunday throughout the state.   Hence it gave information to the people in New York City, and to their representatives in the legislature, that that locality was interested in the proposed enactment.   The constitution seeks an end.   The solicitude of it is not how it is reached ;   and any method which attains that end satisfies the constitution, which prescribes

no form.  The constitutional purpose was not to insure that there should be no legislation discriminating for or against any locality.  It was to insure that such legislation should not be had without that locality being apprised of the intention so to legislate, with opportunity to urge or oppose.  If the title of the bill be so general as to indicate to every portion of the state that possibly it may be brought within the scope of the law, that purpose is effected; so that, though the act deals with New York City alone, and the title indicates the whole state, the dwellers in New York City were apprised that there was a law proposed which might affect them.''  We are of the opinion, therefore, that the act under consideration is not violative of Article IV, § 20, of the Oregon Constitution.

2.   It is next contended that the statute under consideration is a local law regulating the practice in courts of justice, and providing for the assessment and collection of taxes, and is, therefore, void, under the Constitution, Article IV, § 23, which provides that ''The legislative assembly shall not pass special or local laws in any of the following enumerated cases, that is to say:  *   *   *   (3) Regulating the practice in courts of justice;  *   *   *   (10) for the assessment and collection of taxes for state, county, township, or road purposes.''   At the threshold of this objection the plaintiff is met with the contention that the act is a general, and not a special or local law, and for this reason does not come within the section of the constitution referred to.   But, as we are satisfied it is neither a law regulating the practice in courts of justice nor providing for the assessment and collection of taxes for state, county, township, or road purposes, this contention is immaterial for the purposes of the case.   It is difficult to lay down any rule by which it may be determined whether a given statute is an act regulating the practice

in courts of justice or not.  According to Mr. Bouvier, and adopted by Webster, "Practice is the form, manner, and order of conducting and carrying on suits or prosecutions in courts through their various stages, according to the principles of law and the rules laid down by the respective courts:"  2 Bouvier, Dict. p. 357.  And this definition is adopted in the first edition of the American and English Encyclopædia of Law (vol. 19, p. 1), and also in *Butler* v. *Young*, 1 Flip. 276 (Fed. Cas. No. 2,245); *Bowlus* v. *Brier*, 87 Ind. 391.  The act under consideration can in no sense be said to regulate the practice in courts of justice within this rule.  It prescribes no new or other or different form of procedure or manner of conducting suits or actions in the class of counties containing fifty thousand inhabitants than in the other counties of the state.  It does not in any way change or affect the practice or procedure in any court.  The practice in a court is the manner or order in which the proceedings are had and the business of the court transacted, and the law providing the fees which shall be paid by litigants as a condition precedent to their right to invoke the aid of the court manifestly does not affect or regulate the practice.  The statutes of the United States provide that the practice in civil causes other than equity and admiralty cases in the circuit and district courts of the United States shall conform as near as may be to the practice existing at the time in the courts of record of the state in which such circuit and district courts are held.  The laws of Illinois provided that a judge in charging a jury should instruct them only as to the law of the case.  The judge of the United States Circuit Court for Illinois refused to be bound by the state statute, and charged the jury upon the facts in the case ; and the Supreme Court of the United States (*Nudd* v. *Burrows*, 91 U. S. 426) held that the charging of a jury by the judge was not a matter of prac-

tice within the meaning of the federal statutes. In our judgment, therefore, the act in question is not one regulating the practice in courts of justice.

3.   Nor is it an act for the assessment and collection of taxes for state, county, township, or road purposes, within the meaning of Article IV, § 23, subd. 10 of the constitution. The terms "assessment" and "taxation" are often used in a sense co-extensive with the sovereign power under which the right is exercised; as, for instance, when applied to the raising of a special fund to defray the expense of a public local improvement. But the long and well-established meaning of the terms, as ordinarily used in the constitution and statutes, and as generally understood, import a burden imposed for general revenue for the ordinary expenses of the state, county, or township government: *King* v. *City of Portland*, 2 Or. 146; *Meier* v. *Kelly*, 20 Or. 86 (25 Pac. 73). And especially is this true of the word "taxation." "The term 'taxation,' both in common parlance and in the laws of the several states," says Mr. Justice SAWYER, in *Emery* v. *Gas Co.* 28 Cal. 345, 356, "has been ordinarily used, not to express the idea of sovereign power which is exercised, but the exercise of that power for a particular purpose, viz., to raise a revenue for the general and ordinary expenses of the government, whether it be the state, county, town, or city government." And it is in this sense the word is used in the section of the constitution now under consideration. Assessment and taxation in themselves imply an exaction by the sovereign from the citizen, without his consent, and a tax is a charge or pecuniary burden imposed upon an individual or his property for the support of the general government, or for some special purpose authorized by it, for which the state may make requisition in a particular mode: Burroughs, Tax'n, § 4; Cooley, Tax'n, § 1. It operates *in invitum*,

without the consent of the taxpayer, and without reference to any special benefit to him as contradistinguished from the rest of the community or class of persons taxed. It is an exaction from all of the community or class alike, according to some uniform rate or mode of assessment or other just rule of apportionment, and it would be giving to the section of the constitution under consideration an unnatural and unwarranted construction to hold that the language "assessment and collection of taxes for state, county, township, or road purposes" was intended to refer to anything other than to general or public taxes to be levied and collected for the benefit of the state, county, township, or road district.

4.   It is claimed, however, that the case of *Manning* v. *Klippel*, 9 Or. 367, is decisive of this point.   The authority of that case is very much impaired by the subsequent cases of *Northern Counties Trust* v. *Sears*, 30 Or. 388 (41 Pac. 931, 35 L. R. A. 188), and *Landis* v. *Lincoln County*, 31 Or. 424 (50 Pac. 530) ;   but, however that may be, its doctrine can, we think, be distinguished from the case in hand.   The law there under consideration was an act providing a salary for the sheriffs and clerks of certain counties, and fees to be paid to the county by litigants for the services of such officers, and the court proceeds in the opinion on the assumption that it contemplated that the fees to be paid by litigants were to constitute a fund for the payment of the officers' salaries.   The opinion begins by stating that judges, sheriffs, and clerks are public officers, who were formerly paid fixed salaries out of funds raised by general taxation, and then proceeds by saying : "If these services of judge, of sheriff, or of clerk should be compensated, not by contributions laid upon the public generally, but by specific contributions laid upon a particular class, it would seem to be a surprising result that money raised by the same power,

and which performs precisely the same office, should in one case be levied under the power of taxation, and be a tax, and the other be outside of the taxing power.'' And the act was held to be a law for the assessment and collection of taxes for county purposes, because, as indi-. cated in the quotation above, the fees were exacted from a particular class for the purpose of raising a fund with which to compensate the officers named.   Now, the act of 1899 makes no provision, either directly or by implication, as to the disposition of the fees required to be paid by litigants for the services of the county officers, except that they shall be paid into the county fund, and, as a consequence, become a part of the general assets of the county, subject to the disposition of the proper county authorities.   It can in no sense be said to be a fund raised for the purpose of paying the salaries of the county officers, as the court construed the act of 1880 to be.   And, as said by Mr. Justice WOLVERTON, in *Northern Counties Trust* v. *Sears*, 30 Or. 388 (35 L. R. A. 188, 41 Pac. 931), ''A law which requires a fee to be paid to an officer, and finally covered into the treasury of a county, for which the party paying the fee received some equivalent in return other than the benefit of good government, which is enjoyed by the whole community, and which the party may pay, and obtain the benefits under the law, or let it alone, as he chooses, does not come within the category of an act for raising revenue.''

5.   The next objection is that the act in question is a law granting to certain citizens privileges and immunities not belonging to all citizens, and therefore violates the Constitution, Article I, § 20, which provides that ''no law shall be passed granting to any citizen, or class of citizens, privileges or immunities which upon the same terms shall not equally apply to all citizens.''   But it was held in *Re Oberg*, 21 Or. 406 (28 Pac. 130, 14 L. R. A.

577), that legislation which affects alike all persons under the same circumstances and conditions is not such class legislation as is prohibited by this section of the constitution. Within this doctrine the act in question is valid. It does not grant privileges and immunities to one citizen, which, upon the same terms, do not belong to all others similarly situated. It provides the fees which shall be paid by litigants in counties of the designated class, but it applies to all litigants who may have occasion to invoke the aid of the courts in such counties, and therefore is not obnoxious to the section of the constitution referred to. It follows that the judgment of the court below must be affirmed, and it is so ordered.        AFFIRMED.