THEODORE ROOSEVELT, GOVERNOR OF PUERTO RICO, and JAMES R. BEVERLEY, Petitioners, v. DISTRICT COURT OF SAN JUAN, Respondent.

No. 790. Argued August 20, 1931.—Decided August 28, 1931.

804

*James R. Beverley, Attorney General; A. Ortiz Toro, First Assistant
Attorney General;* and *M. Rodríguez Serra, Second Assistant At-
torney General,* for petitioners. *Feliú & La Costa* and *E. Font
Suárez* for plaintiffs in the main action. *Juan B. Soto,* as *amicus
curiae.*

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

The object of this certiorari is to annul an order of the
District Court of San Juan restraining the Governor of
Puerto Rico from putting into effect Act No. 99 of 1931
(Session Laws, 626). This order was obtained at the com-
mencement of the suit wherein complainants alleged that
some of them had been named to fill municipal offices by
virtue of the provisions of Act No. 53 of 1928, and that they
had a right to certain salaries and emoluments and to con-
tinue in office until the ninth of January, 1933; that they
or some of them were electors, residents and taxpayers; that
the Legislature passed Act No. 99 of 1931, which is void;
that the complainants would suffer the imposition of illegal

taxes; that the complainants would be subject to a multiplicity of suits and would suffer irreparable damage; that they were without any other remedy in the ordinary course of the law, and that the action so brought was their sole remedy. The prayer was for a decree, that the act in question was unconstitutional and void; and that in consequence thereof it was the duty of respondents not to make certain appointments provided for in the said act and that they should abstain from making them.

The government contends that this was necessarily a suit for an injunction. The interveners, complainants in the court below, maintain that the action is not a suit for an injunction, but is for the enforcement of an obligation on the part of the Governor not to act, or, in other words, not to take any step under the law, alleged by complainants to be null and void.

If the act authorizing the appointments in question be constitutional, the right and the duty of the Governor to make them is plain. Unless the act authorizing those appointments be unconstitutional, no duty to abstain from making them can arise under the Civil Code, in equity, or under general Municipal Law. The act of the Legislature is presumed to be constitutional. In the absence of a *prima facie* showing strong enough to overcome that presumption, no court should attempt to tie the hands of the Governor either permanently or *pendente lite*.

An action to compel by injunction, whether mandatory or prohibitory, the performance of an alleged duty to abstain from making the appointments is a suit for an injunction. Neither the name given by complainants to the motion for a provisional remedy nor the name of the order granting the relief so sought is important. "A rose by any other name would smell as sweet." Neither a temporary injunction as such, nor an order in the nature of a temporary injunction, although in the guise of a measure to secure the effectiveness

of a possible judgment, should issue as a matter of course at the behest of every litigant. Neither should be granted unless the trial judge be first convinced that complainants have raised some serious constitutional question and that the probable outcome of their suit will be a decree in their favor.

Certiorari, as defined by Compiled Statutes, section 1349, is "a writ issued by a superior to an inferior court requiring the latter to send to the former a certified copy of some proceeding therein pending, . . . in cases where procedure is not according to the course of the law, . . ." Subdivision (*h*) of section 2 of "An Act to secure the effectiveness of judgments," (Comp. Stat. 1911, Sec. 5234) provides that: (Italics ours) "With respect to cases not provided for in the preceding rules, the court shall, *in its discretion and in accordance with equity, adopt such measures as it may deem proper* to secure the effectiveness of the judgment." It may be conceded in passing, (although we would not be understood as so holding) that complainants in a suit for an injunction may apply for and obtain an order under this subdivision or under subdivision (*d*) of the same section. The granting of equitable relief in the nature of a temporary injunction under either of these subdivisions as a matter of course, without the exercise of any caution or judicial discretion, is an error of procedure.

In the instant case the district judge did not consider the merits of the constitutional questions involved. He felt that he was not free to challenge the grounds upon which complainants rested their claims of unconstitutionality, that complainants were entitled as a matter of right to the provisional remedy requested, and that he had no discretion as to granting or refusing such relief. This mistaken view of his power and duty resulted in an error of procedure. He did not exercise any discretion, either sound or judicial.

The questions going to the jurisdiction of this Court, as presented by interveners, do not demand extended discussion.

By the setting of a case a court does not exhaust its power to fix a day for a hearing, but may either postpone or advance such hearing at any time.

We shall not stop to consider the power of the Legislature to fix terms of court or to authorize the calling of special terms by the Governor. If the Governor were powerless to call a special term, the question would then arise as to whether the judges may not act of their own volition and whether such action would be a valid exercise of judicial power. The Court itself has no complaint to make of an invasion of its judicial power.

The reasons for calling the special session were sufficiently stated, we think, in the call. In any event, a majority of the Court as now constituted are of the opinion that the previous call conferred all the authority needed for a disposition of the instant proceeding. There has been no formal adjournment of the first special session of the season.

Two members of this Court are absent from the Island. If they had been summoned by cable they could not have arrived in time for either of the special sessions. Their presence could not have been obtained without a long delay which would have defeated the purpose of the special session. The law does not require the performance of impossibilities, nor the doing of a vain and idle thing. The notice served upon a majority of the members of this court present on the Island was sufficient.

The order complained of by petitioners will be reversed.

Mr Chief Justice Del Toro and Mr. Justice Texidor took no part in the decision of this case.

Mr. Justice Wolf, concurring.

The foregoing opinion and order, so far as we are able to do so, settle the point that no court in a case necessarily involving the unconstitutionality of a statute should act to restrain a defendant unless there is a strong showing of

such unconstitutionality. Barring the fact that in a suit for injunction I am of the definite opinion that the act of 1902 relating to the effectiveness of judgments has no application, I agree with the opinion of the court. However, if the act attacked is not unconstitutional, then no cause of action arises in the complainants and no restraining order of any kind could legally issue. *Debile fundamentum fallit opus.* Likewise, supposing the act to be unconstitutional, if the complainants, whatever their rights, otherwise had no cause of action against the Governor, then similarly no restraining order could issue in this case. It was contended by the complainants, if I am not mistaken, that the sufficiency of the complaint should not be examined. However, if the lack of a cause of action would inevitably do away with the restraining order a discussion thereof can not be considered *obiter dicta.* Originally the complainants insisted that no question of constitutionality should be considered in this court. The attorneys of the government likewise thought such a discussion unnecessary, as they maintained that, considering the terms of the statute of 1902, no stay could issue. I maintain, however, as the consideration of the constitutional questions might settle the whole controversy and the matter was duly before us, that it became my duty to scan the complaint to see if any remedy lay against a possible action by the Governor. A negative answer would tend to take this case out of the courts more rapidly, and probably other cases.

Before the case was over in some of its various stages the constitutional questions were to a certain extent discussed by the parties. As the opinion holds, the presumption of constitutionality is strongly in favor of a statute. Therefore, it became the duty of the complainants to overcome this presumption. This they have not done. On the contrary such examination as I have been able to make convinces me that no ground of unconstitutionality has been alleged that would destroy the whole act. Some attacks may perhaps prevail, but they would not militate against the constitu-

tionality of the act as a whole. I shall examine the principal alleged and discussed grounds of unconstitutionality.

One of the principal questions to which I have given consideration is that the act was approved after the 15th of April, 1931, when by virtue of our Organic Act the legislative session should have ended on that day. The act, however, has been enrolled and certified by the President of the Senate and the Speaker of the House of Representatives and has been printed in the laws of Puerto Rico. Under this situation, unless the plaintiffs can show the case to be distinct, an act so enrolled can not be impeached. *Field* v. *Clark*, 143 U.S. 649, 700; *Chesapeake & Potomac Telephone Co.* v. *Manning*, 186 U.S. 238, 245; *Flint* v. *Stone Tracy Co.*, 220 U.S. 107, 143; *Leser* v. *Garnett*, 258 U.S. 130, 137; and for a more direct case involving adjournment at the time fixed by the Constitution, see *Capito* v. *Topping*, 22 L.R.A. (N.S.) 1059, 64 S.E. 845.

Act No. 99 is in no sense a revenue act as argued by the complainants. When revenues are an incident of the principal act, the constitutional principle invoked is not applicable. It is only when the purpose of the act is clearly to raise revenues that the act must take its origin in the House of Representatives. The Legislature, under sections 29 and 37 of the Organic Act, has power to abolish or create municipalities, and may grant all the measures or powers necessary to carry the act into effect. *Twin City Bank* v. *Nebeker*, 167 U.S. 196; *Millard* v. *Roberts*, 202 U.S. 429; *United States* v. *Norton*, 91 U.S. 566; *Northern Counties Invest. Trust* v. *Sears*, 30 Oregon 388, 41 Pac. 931, 35 L.R.A. 188 and note; *Rankin* v. *City of Henderson*, 7 S.W. 174. It is interesting to note also that the so-called Foraker Act organizing the civil government for Puerto Rico very probably originated in the Senate of the United States.

Various objections were made to the title of the act. When a municipality is to be created and attention is drawn to this fact in the title, the latter becomes a signpost of all

that is contained in the act. The complainants maintained that certain matters were not referred to in the title, but the law also contains a large number of other matters which were not mentioned. The conclusion I have reached, sustained by the courts, is that if the contention of the plaintiffs were to prevail practically every clause of an act would have to be referred to in the title. As authorities for this paragraph I cite *Montclair* v. *Ramsdell,* 107 U.S. 147; *Louisiana* v. *Pilsbury,* 105 U.S. 278; *Carter County* v. *Sinton,* 120 U.S. 517, 526; *Blair* v. *Chicago,* 201 U.S. 400; *Rodríguez* v. *P. R. Ry. Lt. & P. Co.,* 30 P.R.R. 869.

It is maintained under similar considerations that the act was amended to such a degree that it was practically converted into a new one. The authorities are clear in the sense that even if a new bill is substituted, if the changes effected are germane to the title or the purpose of the title, no constitutional provision is violated. I cite for the application they may have: *Wood* v. *City of Wheeling,* 102 S. E. 259; *Devock* v. *Moore,* 63 N. W. 424; *Threft* v. *Towers,* 95 Atl. 1064; *Attorney General ex rel. Pack* v. *Barton,* 11 Mich. 367; *State ex rel. McCaferry* v. *Mason,* 55 S. W. 636; *State ex rel. Davis Atty. Gen.* v. *Cox,* 178 N. W. 913; *Southern R. Co.* v. *Memphis,* 41 L.R.A. (N.S.) 828, 838; *People ex rel. Hart* v. *McElroy,* 40 N. W. 750; *Southern Ry. Co.* v. *Mitchell,* 37 So. 85.

Likewise, I also think that a sufficient identification of the municipality of San Juan was made when the act referred to the "Capital." Popularly, San Juan is frequently mentioned as *"la Capital."* Furthermore, the Organic Act provides that the capital of Puerto Rico shall be the city of San Juan and the seat of the government shall be maintained there.

With respect to the right to vote, the Legislature is not obliged to give the citizens of a municipality an immediate right to vote. The government of the municipalities is entirely under the control of the Legislature. In the case of

*Martínez* v. *Saldaña,* 38 P.R.R. 398, the question was the right to vote for certain offices like the Resident Commissioner to Washington, where this right was protected by the Organic Act. The people have a right to elect their senators and representatives, and the legislature so constituted is supposed to express the will of the people.

Even on the assumption that the act is unconstitutional, the plaintiffs do not convince me that the right that the Governor has to make appointments is anything else but a pure political right, and the general rule is that political discretion can not be controlled by the courts. *Luther* v. *Borden,* 7 How. 1; *State of Georgia* v. *Stanton,* 6 Wall. 50; *New Jersey* v. *Sargent,* 269 U.S. 328; *Taylor and Marshall* v. *Beckham* (No. 1) 178 U.S. 548, 557; *Pacific Telephone Co.* v. *Oregon,* 223 U.S. 118.

As a suit for injunction, I am inclined to the view that under section 4 of the injunction law no restraining order could issue against the Governor.

As we have held that the suit is one in injunction, it becomes unnecessary greatly to consider some of the principal questions raised by the parties. Under the reasoning in the briefs of the government and the original brief of the *amicus curiae,* I incline strongly to the view that even considering this as an ordinary suit no obligation not to act would arise. Likewise, except in injunction cases, that the action would be premature. What I wish to say is that from whatever aspect the case is viewed the complainants have no relation or nexus with the Governor accruing to them so far as his nominating power is involved.

I am authorized to state that my associates do not necessarily dissent from the greater part of the considerations of this opinion, but they think it unadvisable to discuss all of them in this writ of certiorari.

For the foregoing reasons, I am of the opinion that the order of the District Court of San Juan of July 24, 1931, should be annulled.