Argued January 7, reversed January 19, 1915.

## STATE *v.* YOUNG.

(145 Pac. 647.)

**Criminal Law—Appeal—Findings of Fact.**

1. Findings of fact by the trial court have the force of a verdict.

**Statutes—Construction.**

2. The object of construing statutes is to ascertain the legislative intent.

**Statutes—Construction.**

3. Unambiguous statutes should not be construed.

**Statutes—"Proviso"—Office of.**

4. The office of a "proviso" is to limit or restrain the preceding enactments, and cannot be held to enlarge such enactments.

5. Laws of 1913, page 169, Section 2, declares that no person shall be employed in any mill, factory or manufacturing establishment more than ten hours in any one day, except watchmen and employees engaged in making necessary repairs, provided that employees may work overtime, not to exceed three hours, upon payment therefor. *Held* that, as the proviso does not enlarge the exception, the prohibition does not apply to a servant in a sawmill engaged in making ordinary repairs necessary to the conduct of the business, although they were not unusual, and would in any case have to be made sooner or later, for the term "necessary repairs" should be construed as convenient or needful repairs; it not being the purpose of the legislature to discourage the immediate repairing of machinery.

[As to constitutionality of statutes limiting length of day's labor, see note in Ann. Cas. 1912D, 393.]

From Lake: HENRY L. BENSON, Judge.

In Banc. Statement by MR. JUSTICE BEAN.

On May 11, 1914, the defendant, James Young, was indicted by the grand jury of Lake County for the violation of the provisions of Chapter 102, General Laws of Oregon 1913, by employing one William Harvey for more than 10 hours in one day—to wit, for 11 hours. The cause was tried before the court without the intervention of a jury. Based upon a stipulation, the court made, in substance, the following findings of fact: That the above-named defendant, James Young, for more than a year last past has been, and now is, operating a sawmill engaged in the manufacture of lumber, in Lake County, Oregon, and was so occupied on the 8th day of May, 1914; that said sawmill is such a mill, factory and manufacturing establishment as is contemplated by Chapter 102, of the General Laws of Oregon for the year 1913; that on the 8th day of May, 1914, James Young employed and caused one William Harvey to work in said mill for 11 hours; that William Harvey is regularly employed at such mill in making repairs to the machinery, equipment, and appliances, and was so employed on the 8th

day of May, 1914, for a period of 11 hours; that William Harvey was not on the 8th day of May, 1914, a watchman; that the repairs which William Harvey made on that date in the mill were such repairs as are required in all sawmills for the purpose of keeping the machinery, equipment and appliances in good working order, and were the repairs which are ordinarily, regularly and continuously required in all mills and factories, and were in that sense necessary repairs in such mill, but that they were not necessary in the sense that a failure to make them involved immediate or imminent danger to life or property, and that at said time in said mill there existed no other emergency where life or property was or is in imminent danger; that William Harvey did not receive pay at the rate of time and one half the regular wage for all time in excess of 10 hours of such work; that defendant refused to pay such excess. Based upon the findings of fact, the court, as a conclusion of law, found that the defendant, James Young, was guilty, and adjudged that he pay a fine of $50. The defendant appeals. REVERSED.

For appellant there was a brief and an oral argument by *Mr. W. Lair Thompson.*

For the State there was a brief over the names of *Mr. Andrew M. Crawford,* Ex-Attorney General, *Mr. George M. Brown,* Attorney General, and *Mr. O. C. Gibbs,* with an oral argument by *Mr. Brown.*

MR. JUSTICE BEAN delivered the opinion of the court.

1-5. Section 2, Chapter 102, Laws of 1913, page 169, is as follows:

"No person shall be employed in any mill, factory or manufacturing establishment in this state more than

ten hours in any one day, except watchmen and employees when engaged in making necessary repairs, or in case of emergency, where life or property is in imminent danger; provided, however, employees may work overtime not to exceed three hours in any one day, conditioned that payment be made for said overtime at the rate of time and one half the regular wage.''

The question for determination is whether or not the defendant is guilty of the violation of this statute upon the facts as stipulated and found by the court. The findings of fact of the trial court have the force and effect of a jury's verdict, and it is necessary only to examine the conclusion of law deduced therefrom. The question arises as to the construction of the words ''necessary repairs.'' If it was the legislative intent that necessary repair work should not be included in those employments which when continued for more than ten hours were denounced by the legislature, then the defendant is not guilty. In the brief of the Attorney General the case is stated thus:

''If the phrase 'necessary repairs,' as there used, means the usual and ordinary repairs regularly and continuously required in all mills, factories and manufacturing establishments to keep the machinery and equipment in that good working order which is necessary for their most economical operation, William Harvey was within the exception of the statute; the provision requiring the payment of time and one half the regular wage for all time worked in excess of ten hours was inoperative (as to him), and the conviction of the defendant for his failure and refusal so to pay Harvey must be set aside. On the other hand, if the phrase 'necessary repairs,' as used in the section quoted, means only such repairs as are indispensable to the immediate and continued operation of a mill, factory, or manufacturing establishment, and for the

want of which such mill, factory, or manufacturing establishment would immediately be forced to close down and cease operations entirely, William Harvey was not within the exception of the statute. * * ''

The cardinal point in the construction of a statute is to ascertain the intention of the legislature. Such intention and the object aimed at controls the literal interpretation of particular language in a statute, and an expression capable of more than one meaning must be taken in the sense harmonizing with such intent: *State* v. *Simon,* 20 Or. 365 (26 Pac. 170); *Northern Counties Trust* v. *Sears,* 30 Or. 388 (41 Pac. 931, 35 L. R. A. 188); 26 Am. & Eng. Ency. Law (2 ed.), 597. By the first general rule of statutory construction we are not permitted to interpret that which has no need of interpretation. It is only when the act in question is of doubtful or ambiguous meaning that the province of construction or interpretation begins: 26 Am. & Eng. Ency. Law (2 ed.), 597, 598; *Hamilton* v. *Rathbone,* 175 U. S. 421 (44 L. Ed. 219, 20 Sup. Ct. Rep. 155). It was held by this court in *Dutro* v. *Ladd,* 50 Or. 120 (91 Pac. 459), that, when the language of a statute is clear and unambiguous, the court should declare the meaning imported, and not resort to rules of construction for some other meaning. From a review of the statute it would seem that there is no necessity for applying to it any of the rules of construction. The language is plain and unambiguous, and should be applied according to its obvious meaning without the application of any of the artificial rules of construction. From the whole context it appears that the law inhibits generally employing a person in a mill, factory, or manufacturing establishment more than ten hours in one day. Excepted from this provision are: (1) watchmen; (2) employees when engaged in

making necessary repairs; and (3) persons employed in case of an emergency where life or property is in imminent danger. There is a proviso attached which applies to all employees conditioned that they may work overtime not to exceed three hours in any one day upon the payment at the rate of time and one half the regular wage. This proviso we construed in *State* v. *Bunting,* 71 Or. 259 (139 Pac. 731, 735), in the nature of a mild penalty, and as an assistance in the enforcement of the law in cases of the infraction thereof, by reason of employment for a short time in excess of that directed. If, however, we assume that the statute is somewhat ambiguous, and apply the rules of construction, we shall reach the same point by another path. Mr. Black, Interpretation of Laws (2 ed.), page 428, states:

"When the technical terms are used with techincal precision, the distinction between a proviso and an exception is this: An exception exempts absolutely from the operation of an enactment, while a proviso defeats its operation conditionally. An exception takes out of an enactment something which would otherwise be part of the subject matter of it; a proviso avoids it by way of defeasance or excuse. There is also a well-known distinction between an exception in the purview of the act and a proviso in this respect. If there be an exception in the enacting clause of a statute, it must be negatived in pleading, but a separate proviso need not be, and that although it is found in the same section of the act, if it be not referred to and engrafted on the enacting clause."

In *Campbell* v. *Jackman Bros.,* 140 Iowa, 475 (118 N. W. 755, 27 L. R. A. (N. S.) 288), a case involving the construction of the liquor laws of the State of Iowa, in which it was insisted that in the use of an exception it should not receive a construction that

would absolutely exempt from the operation of the law liquor dealers, the court said:

"The effect of any sweeping general statutory provision which is followed by, or coupled with, an express exception naturally and necessarily depends upon the nature and extent of the exception, and, if this be of such character as to emasculate the principal clause or render any of its terms meaningless, the courts are nevertheless required to give effect to such exception, whatever they may think of the candor or want of candor which controlled the phraseology of the law. * * The office of an exception in the statute is, generally speaking, to take or exclude from the operation of the statute certain things or subjects which would otherwise be included therein (see Bouvier's Law Dictionary), and, where the exception is clearly expressed and is within the constitutional power of the legislature, those who question its justice, wisdom, or policy must seek the remedy at the hands of the legislature itself."

The Supreme Court of Oklahoma, in *Leader Printing Co.* v. *Nicholas,* 6 Okl. 302 (50 Pac. 1001), in determining the effect of a double exception, held that a double exception or proviso which is capable of two constructions, the one of which would render the use of the first exception meaningless, and the other of which would give effect to both exceptions, should receive a construction that would give effect to both. In the case under consideration, if the legislature had intended to require the payment of time and one half for overtime to employees engaged in necessary repair work, there would have been no need to have included in the section the words "except watchmen and employees when engaged in making necessary repairs," for the reason that the proviso for time and one half covered every class of employment in a mill, factory or manufacturing establishment. In other

words, if the proviso for time and one half for over-time applies to employees engaged in necessary repair work, then the exception excluding repairmen above quoted is meaningless. The office of a proviso is to limit or restrain preceding enactments, and cannot be held to enlarge the scope of such preceding enactment: *Stiers* v. *Mundy* (Ind. App.), 89 N. E. 959. It is said in *Minis* v. *United States,* 15 Pet. 423 (10 L. Ed. 791):

"The office of a proviso, generally, is either to except something from the enacting clause, or to qualify or restrain its generality, or to exclude some possible ground of misinterpretation of it, as extending to cases not intended by the legislature to be brought within its purview."

The word "necessary" must be construed in the connection in which it is used. It is a word susceptible of various meanings. It may import absolute physical necessity, or that which is only convenient or useful or essential: 5 Words and Phrases, p. 4705. The courts have many times construed the word "necessary," and it has almost universally been held to mean needful or convenient; especially is this the case where the word is used in conjunction with other and stronger terms. In *McCulloch* v. *Maryland,* 4 Wheat. 413 (4 L. Ed. 579), Mr. Chief Justice MARSHALL, holding the authority vested in the United States Congress to pass necessary laws to carry into effect the powers granted to that body, had the following to say in regard to the meaning of the word "necessary":

"Is it true that this is the sense in which the word 'necessary' is always used? Does it always import an absolute physical necessity so strong that one thing to which another may be termed necessary cannot exist without that other? We think it does not. If

reference be had to its use, in the common affairs of the world, or in approved authors, we find that it frequently imports no more than that one thing is convenient, or, useful, or essential to another. * * ''

See, also, *People* v. *Mauran,* 5 Denio (N. Y.), 389; *Nicoll* v. *New York & E. R. Co.,* 12 N. Y. 121; *Northern Pac. Ry. Co.* v. *McAdow,* 44 Mont. 547 (121 Pac. 473); *Butte A. & P. Ry. Co.* v. *Montana U. Ry. Co.,* 16 Mont. 504 (41 Pac. 232, 50 Am. St. Rep. 508, 31 L. R. A. 298); *Chicago, I & L. Ry. Co.* v. *Baugh,* 175 Ind. 419 (94 N. E. 571, 573).

This court, in construing our exemption statute in *Stewart* v. *McClung,* 12 Or. 431 (8 Pac. 447, 53 Am. Rep. 374), held that the exemption from execution of the ''necessary wearing apparel owned by any person to the value of one hundred dollars'' does not mean that it is such apparel as is indispensable, but that necessary means convenient and comfortable: *Kinser Const. Co.* v. *State,* 204 N. Y. 381 (97 N. E. 871).

It is contended by counsel for the state that necessary repairs can only mean those extreme cases in which failure to repair machinery would tie up the plant or imperil life; that the labor ordinarily and daily employed in maintaining reasonable efficiency was not intended to be excluded from the application of the act. With this contention we are not able to agree. We cannot believe from the language of the act that the lawmakers intended that, in the trial of cases for an alleged infraction of the statute, an issue should be litigated in regard to which different minds might disagree as to the necessity of making repairs; but, rather, that the word ''necessary'' is used to prevent the matter of making of repairs from being used as a subterfuge to defeat the purpose of the law; that is, according to the legislative intent, ''necessary re-

pairs'' denotes those needful, not frivolous or unnecessary. Needful repairs are indispensable to the proper operation of the manufacturing establishment. They are also indispensable to the immediate and continued successful operation of such an industrial plant, and urgent in order to lessen the danger of accident to life and limb, and as we view it, in order to carry out one of the important purposes of the act. To encourage the delay of making repairs until ''they were necessary in the sense that a failure to make them would involve immediate or imminent danger to life or property'' would be an effort to adopt the rule of ''locking the stable after the horse is stolen,'' and we do not think that such was the intention of the lawmakers, as disclosed by the plain provisions of the statute. The natural result of the law is twofold, the one being the protection of the employees and the attainment of a high degree of intelligence and citizenship on their part, and the other the enhancement of a degree of excellence and efficiency in the operation of the industrial establishment. The law has been upheld by this court upon the ground, *inter alia,* of reasonableness. To require a mill or factory to shut down and the majority of the force of operatives to remain idle while the ordinary and usual repairs are being made by those upon whom that duty devolves would tend to work a hardship upon all concerned. Such is not in accordance with the plain requirements of the statute, which appears to contemplate, to express it in common parlance, the running of such manufacturing establishment for ten hours per day without penalty or extra compensation, at such remuneration to those employed as may be agreed upon by the parties. The position that one in making necessary repairs would be excluded from the provisions of the

act only in case of emergency, is no more tenable than that a watchman would be excluded from such provisions only under the same circumstances. The employment of William Harvey in the sawmill in making repairs necessary for keeping the machinery, equipment and appliances in the mill in good working order which are ordinarily required in mills and factories, for more than ten hours, was not a violation of the statute of 1913.

The judgment of the lower court will therefore be reversed and the defendant discharged.

Reversed. Defendant Discharged.