This is transfer tax appeal, by the administrator of Phyllis Johnson, deceased, from the tax levied by the comptroller on the transfer of her estate.
Decedent died, a resident of New Jersey, March 17th, 1929, intestate. She left only personal estate of the net value of $2,458.92, which passed to her illegitimate son, Charles Plicque, who was her sole next of kin. She had never married.
The comptroller levied a tax at the rate of eight per cent. Appellant contends that this was error; that the transfer in question was exempt from tax under the provision of the statute exempting transfers to a "child," of property up to $5,000 in value. This is the sole issue. *Page 565 
The pertinent provisions of the Transfer Tax act, as amended (P.L. 1927 ch. 228 p. 428 — at pp. 431, 433), are as follows:
"Property passing to a father, mother, husband, wife, child orchildren of a decedent, or to any child or children adopted by the decedent, in conformity with the laws of this state, or of any of the United States, or of any foreign kingdom, or nation, or the issue of any child or legally adopted child of a decedent, shall be taxed at the rate of one per centum on any amount in excess of five thousand dollars, up to fifty thousand dollars; * * *
 * * * * * * * *
"Property passing to every other transferee, distributee, orbeneficiary not hereinbefore classified shall be taxed at the rate of eight per centum on any amount up to nine hundred thousand dollars; * * *"
If it be determined that under the true intent and meaning of the first of these provisions, the transfer in question comes within the scope thereof, then the estate is not taxable and the assessment must be set aside; otherwise, concededly, the tax has been correctly assessed under the second of the quoted provisions.
It is contended by appellant (1) that the usual and ordinary meaning of the word "child" in the English language does not exclude an illegitimate child. A child is "the immediate progeny of human parents;" a child is equally a child whether it be a legitimate child or an illegitimate child;
(2) That there are no words or provisions in the Transfer Tax act limiting the meaning of the word "child" as used in that act, to children born in lawful wedlock;
(3) That the tendency of modern civilization has been, and is, towards amelioration of the disabilities and inferior condition under which an illegitimate child rested in earlier times; and
(4) That there are many statutes of this state wherein the word "child" is used, which contain no express words of intent to include illegitimate children, but which have been judicially determined to include illegitimate as well as legitimate children, within the scope of that classification, according *Page 566 
to their true intent and meaning, or which no one has contended or would contend intended to exclude illegitimate children from the meaning of that word; citing for the most part criminal statutes, such as those against procuring the abortion of a child, and other crimes against children — statutes prohibiting or restricting child labor, and the like — to which might be added, doubtless, the statutes as to schools and education.
All this is true, but by no means necessarily leads to the conclusion which appellant draws, that the word used in the Transfer Tax act is meant to include illegitimate children.
It is beyond question that in some statutes of this state the word "child" is intended to include illegitimate children, and that in others it is intended to exclude them. In any given statute, therefore, the use of the word "child," without expression of which meaning is intended, requires judicial interpretation.
It is equally beyond question that it is the law of this state that where the word "child" is used in a will, it means only legitimate children, unless it clearly appears from other provisions of the will or the surrounding circumstances that a broader meaning was intended. This is conceded by appellant.
The same thing is true as to the interpretation of the meaning of the word "child," where it appears in our statutes of wills and of descent and of distribution — the statutes relating to the succession of title to property on the death of the former owner; and this is at least impliedly conceded by appellant.
That the same thing is true as to the interpretation of the meaning of the same word when used in deeds or other instruments of conveyance of a similar nature — and when used in the statutes relating to conveyances — is not denied by appellant (although asserted by respondent), and doubtless will not be denied by appellant or anyone else. No one will seriously contend that a conveyance with remainder "to the children of A" will be deemed to include any illegitimate child of A, or that a statute dealing with the result of such or similar remainders will be construed differently. *Page 567 
It is one of the cardinal rules of statutory interpretation that statutes relating to the same or similar subject-matters are to be construed together, with relation to and in explanation of each other — as forming together a unified system; and that when a word has been used in a certain sense in one statute forming a part of such system, and is later used in another statute dealing with the same general subject-matter, it must be presumed (unless the contrary be otherwise indicated), that the legislature used the word in the later statute in the same sense as in the other earlier statutes. 36 Cyc. 1147 et seq; State v. Garthwaite,23 N.J. Law 143; In re Book, 90 N.J. Eq. 549 (at p. 553).
Obviously the statute sub judice is to be read as in parimateria with the statutes of wills, descent, distribution and conveyance — the statutes which constitute the system or body of our substantive statute law relating to the transmission or transfer of property at the death of the owner or conveyances in anticipation or in lieu of such transfer. It is true that this statute does not itself purport to contain any expressions directly affecting the principles of law relating to any such transfer. But it does refer to and deal with the whole body of the law relating to such transfers, because it purports to impose a tax upon all such transfers. Obviously then, it is only logical and natural to assume that the legislature in speaking in this statute is using the same language it used in the statutes dealing with the very transfers upon which it now imposes a tax.
As has already been said, it is not open to serious argument that the word "child" in those statutes was intended to mean only legitimate children. In the statute of distribution the legislature has occasionally made provision in certain instances for succession by illegitimate children, but in such cases it has specifically designated them as "illegitimate children," in clear and obviously expressed contra-distinction to the legitimate children which it designated simply as "children." There is no provision whatever in the statute of descent for succession by illegitimate children. *Page 568 
As is well known, it has repeatedly been determined that the legislative meaning of the word "child" in those statutes not only was limited to lawful children, but was limited to lawfulnatural born children. In order to change that meaning so that lawfully adopted children should not continue to be excluded from the rights and privileges conferred upon lawful natural born children by those statutes and the rules of the common law, the legislature eventually enacted a statute which, in effect, enlarged the meaning of the word child in all such statutes and laws to include lawfully adopted children. In re Book, supra.
But the legislature has never enacted any such statute in regard to illegitimate children; it has in no wise indicated any intent or attempt to include illegitimate children within the scope of the word "child" in such statutes.
While there have been some statutes ameliorating the condition of the illegitimate child in certain particulars, the very fact that such acts have been specific, and not general (as in the case of the adopted child), is a clear indication of an intent not to extend the effect of such ameliorating legislation beyond the specific instances provided for.
The same thing is true with regard to one or two statutes, giving to certain classes of illegitimate children the general and complete status of legitimate children — such as P.L. 1915ch. 173, dealing with illegitimate children whose parents subsequently marry; and P.L. 1924 ch. 144, dealing with children of a ceremonial marriage subsequently declared void. These statutes are expressly limited to the specific classes mentioned, and cannot be construed to include illegitimate children generally. They do not apply in the case at bar, because the decedent admittedly was never married.
In brief, then, it is well settled that the word "child" in the statutes dealing with the transfer of property at death, or by conveyance (in lieu of testamentary disposition), does not include illegitimate children; that the Transfer Tax act, imposing a tax upon the transfers or conveyances dealt with in such statutes, deals with the same subject-matter *Page 569 
and is in pari materia with such statutes, and the word "child," therefore, in such Transfer Tax act, is to be construed not to include illegitimate children unless such inclusion is indicated by other expressions in the statutes; and there are no such other expressions in the statute.
Another reason for reaching this conclusion as to the interpretation of the word "child" in this Transfer Tax act, is that in the section in question (quoted supra), the exemption is expressed to be given as well to an adopted child as to a "child;" and by a prior act (P.L. 1912 ch. 226 p. 367), subsequently altered on this point (P.L. 1922 ch. 174 p. 297), the exemption was also given to mutually acknowledged children. On the well-known principle of inclusio unius est exclusioalterius, the conclusion results that the legislature did not intend to include, but intended to exclude, illegitimate
children from the categories mentioned in this paragraph.
The assessment will be affirmed. *Page 570