ELINOR E. PALMER AND JOHN A. BENNETT, EXECUTORS OF THE ESTATE OF GERTRUDE D. EWER, DECEASED, APPELLANTS, v. WILLIAM KINGSLEY, DEPUTY DIRECTOR, DIVISION OF TAXATION, DEPARTMENT OF THE TREASURY OF NEW JERSEY, RESPONDENT.

IN THE MATTER OF THE TRANSFER INHERITANCE TAX ASSESSMENT IN THE ESTATE OF GERTRUDE D. EWER, DECEASED.

Argued May 20, 1958—Decided June 25, 1958.

426

*Mr. Robert B. Shepard, Jr.,* argued the cause for the appellants (*Messrs. Bennett and Shepard,* attorneys).

*Mr. Joseph A. Jansen* argued the cause for the respondent (*Mr. David D. Furman,* Acting Attorney-General).

The opinion of the court was delivered by

PROCTOR, J. The issue here is whether the adopted children of a testatrix' daughter qualify as "issue of any child" of the decedent within the meaning of *N. J. S. A.* 54:34–2, *subd. a* of the Transfer Inheritance Tax Act, *L.* 1909, *c.* 228, as amended (*N. J. S. A.* 54:34–1 to 13).

The facts as stipulated by the parties show that Gertrude D. Ewer died testate on January 20, 1957, while a resident of Montclair, New Jersey. Her will, which was dated November 14, 1951, named her daughter, Elinor E. Palmer, and a friend, John A. Bennett, as executors and trustees. She had also executed a codicil to her will, which was dated February 10, 1956. Elinor E. Palmer was the natural-born child of the decedent. During the lifetime of the decedent and prior to the execution of decedent's will, her daughter Elinor legally adopted two minor children, Richard H. Palmer in 1930 and Maurine Palmer (now Hanley) in 1931.

Under the provisions of the will and codicil the testatrix left certain property to Maurine valued by the Inheritance Tax Bureau at $31,172.17, and certain other property to Richard valued at $36,672.17. These valuations are not in dispute.

The Transfer Inheritance Tax Bureau ruled that the bequests to Maurine and Richard, the adopted children of the decedent's daughter, were not entitled to be taxed at the rate of 1% pursuant to *N. J. S. A.* 54:34–2, *subd. a,* which is applicable to the transfer of property to "the issue of any child" of a decedent, and held that the bequests were taxable at the rate of 8% pursuant to *N. J. S. A.* 54:34–2, *subd. d,* which applies to the transfer of property to persons not otherwise classified. An appeal by the executors was taken to the Superior Court, Appellate Division, and, before hearing there, it was certified by this court on our own motion.

The appellants contend that the Transfer Inheritance Tax Act should be read *in pari materia* with the Adoption Act, *L.* 1953, *c.* 264, *p.* 1778 (*N. J. S. A.* 9:3–1 to 36); that when so read *N. J. S. A.* 54:34–2, *subd. a* of the Transfer Inheritance Tax Act, which speaks of "the issue of any

child" of the decedent, should be construed to include an adopted child of the decedent's daughter. The appellants argue further that any other construction would vitiate the legislative design to place adopted children on the same footing as natural children.

The Bureau contends that the Transfer Inheritance Tax Act should be strictly construed and that the provisions of the Adoption Act have no relevancy.

*N. J. S. A.* 54:34–2, *subd. a* of the Transfer Inheritance Tax Act provides in part:

"The transfer of property to a father, mother, grandparent, husband, wife, child or children of a decedent, or to any child or children adopted by the decedent in conformity with the laws of this state, or of any of the United States or of a foreign country, *or the issue of any child* or legally adopted child of a decedent, shall be taxed at the following rates:
On any amount in excess of $5,000 up to $50,000 ...... 1% * * *."
(Italics supplied.)

*N. J. S. A.* 54:34–2, *subd. d,* which applies to persons not otherwise classified in the act, provides in part:

"The transfer of property to every other transferee, distributee or beneficiary not hereinbefore classified shall be taxed at the following rates:
On any amount up to $900,000 .... . 8% * * *."

The question presented is novel. The term "issue of any child" as employed in the Transfer Inheritance Tax Act is not defined in that act. The statute does not limit the word "issue" to natural-born children, nor is the term qualified in any other manner. Research has disclosed no instance of judicial construction of this section of the Transfer Inheritance Tax Act with reference to the meaning of the term "issue of any child." The reported cases dealing with the ordinary testamentary signification of the term "issue" are not here relevant. Our inquiry is directed toward ascertaining the legislative intent with respect to the meaning of the word "issue," rather than toward seeking the probable intention of a decedent, who employed the word "issue" in

a testamentary document. See *In re Wehrhane,* 23 *N. J.* 205 (1957).

It is a cardinal principle of statutory construction that statutes relating to the same or similar subject matter— statutes *in pari materia*—are to be construed together. *Sutherland, Statutory Construction* (3rd ed. 1943), § 5201. The phrase "issue of any child" is used in the Transfer Inheritance Tax Act in relation to the transfer of property upon the death of the owner. While this statute does not purport to directly affect the legal principles relating to the transfer of property, it does refer to and deal with the entire body of the law relating to such transfers, since it imposes a tax upon all such transfers. *Bank of Montclair v. McCutcheon,* 107 *N. J. Eq.* 564, 567 (*Prerog.* 1930). Our statutes concerning adoption, wills, descent and distribution and inheritance taxes, which comprise the body of our substantive statutory law regulating the transmission of a decedent's property, are *in pari materia* and should be construed together as constituting one coherent and integrated legislative system; each statute to be deemed explanatory of the other. See *Page v. Johnson,* 45 *N. J. Super.* 97, 107 (*Ch. Div.* 1957); *Guarantee Bank & Trust Co. v. Gillies,* 8 *N. J.* 88, 94 (1951); *Commercial Trust Co. of N. J. v. Adelung,* 136 *N. J. Eq.* 37, 44 (*Ch.* 1944), affirmed 137 *N. J. Eq.* 541 (*E. & A.* 1946); *Bank of Montclair v. McCutcheon, supra; In re Book's Will,* 90 *N. J. Eq.* 549, 552 (*E. & A.* 1919); *In re Estate of Peddie,* 20 *N. J. L. J.* 279 (1897). Since our Adoption Act is *in pari materia* with the Transfer Inheritance Tax Act it is only natural that we look to the Adoption Act in seeking to determine whether an adopted child is included within the meaning of the word "issue" as used in the Transfer Inheritance Tax Act.

*N. J. S. A.* 9:3–30, *subd. B* of our present Adoption Act, *L.* 1953, *c.* 264, *p.* 1777 (*N. J. S. A.* 9:3–17 to 36) provides:

"The entry of a judgment of adoption shall establish the same relationships, rights, duties and obligations between the child and the adopting parent as if such child were born to such adopting parent in lawful wedlock. In applying the intestate laws of this State, an

adopted child shall have the same rights of inheritance as if born to the adopting parent in lawful wedlock. In the construction of any testamentary or other document executed subsequent to the effective date of this act, an adopted child shall be deemed lawful issue of the adopting parent unless such document shall otherwise provide."

The Director contends that the language employed in *N. J. S. A.* 9:3–30, *subd. B* has no effect upon the meaning of the word "issue" in *N. J. S. A.* 54:34–2, *subd. a.* He asserts that "it would have been very easy and logical for the Legislature, and well within the Legislative prerogative, to have so worded the 1953 Adoption Act to accomplish the result sought for." He argues that the Legislature failed to accomplish that result since "nowhere does the Legislature say that an adopted child *is* a natural child."

While the Legislature is vested with broad powers to enact laws, it could not within the recognized limits of human lawgiving presume to ordain that an adopted child *is* a natural child. It perforce was limited to the use of perhaps less dynamic, but nevertheless, equally effective words to convey its intention to invest an adopted child with a status equal to that possessed by a natural child with reference to our laws regulating the transfer of a decedent's property.

In *In re Book's Will,* 90 *N. J. Eq.* 549 (1919), our former Court of Errors and Appeals was called upon to decide whether or not the word "issue" contained in section 20 (now *N. J. S.* 3A:3–10, *N. J. S. A.*) of the Wills Act included an adopted child. The Legislature did not define the term "issue" as employed in the Wills Act, nor did that act contain any language qualifying its meaning. The court, after referring to the former Adoption Act, *L.* 1902, *c.* 92, *p.* 249, as amended, said:

"The effect of the legislation just adverted to is to clothe the adopted child with all the rights of a natural child so far as inheritance of real estate or the distribution of personal estate is concerned. It makes such child the lawful child of the adopting parent in these respects."

The court held that the Adoption Act should be read *in pari materia* with the Wills Act and concluded that when so read

the word "issue" appearing in section 20 of the Wills Act included an adopted child. *A fortiori* a similar construction must obtain in the case *sub judice.* The 1902 Adoption Act, which was construed in *In re Book's Will, supra,* contained several limitations upon an adopted child's rights of inheritance, *i. e.,* he could not take property expressly limited to the heirs of the body of the adopting parent or property deriving from collateral kindred of the adopting parent by right of representation. However, the 1902 Adoption Act was repealed in 1953 and the present Adoption Act enacted. *L.* 1953, *c.* 264. The latter act eliminated the limitations contained in the 1902 act, thereby enlarging considerably an adopted child's rights of inheritance.

▆ *N. J. S. A.* 9 :3–30, *subd. B* declares that "a judgment of adoption shall establish the same relationships, rights, duties and obligations between the child and the adopting parent as if such child were born to such adopting parent in lawful wedlock"; that "an adopted child shall have the same rights of inheritance *as if born* to the adopting parent in lawful wedlock," and that in construing any testamentary or other document executed after the act became effective "an adopted child shall be *deemed* lawful issue of the adopting parent unless such document shall otherwise provide." (Italics supplied.) This language leaves no doubt as to the Legislature's intention to confer upon an adopted child the same status which is conferred upon a natural child by our statutes regulating the transfer of a decedent's property. Equal status comprehends equal treatment in regard to the incidence of taxation upon all such transfers. The conclusion is inescapable that the Legislature intended that an adopted child be included within the meaning of the word "issue" as it appears in the Transfer Inheritance Tax Act. It follows then that Maurine and Richard, the adopted children of Elinor, are in legal contemplation the "issue" of Elinor, the child of the decedent.

We conclude that the phrase "issue of any child," as employed in *N. J. S. A.* 54 :34–2, *subd. a,* comprehends the legally adopted children of a child of the decedent.

The case of *Hopkins v. Neeld,* 41 *N. J. Super.* 345 (*App. Div.* 1956), relied upon by the Bureau, is plainly distinguishable from the case under consideration. There the decedent was survived by three stepchildren who collectively had nine natural-born children. The decedent left her residuary estate to these nine children. The Tax Bureau imposed the 8% tax under *N. J. S. A.* 54:34–2, *subd. d.* The court confirmed the assessment. Aside from the obvious factual differences, the court significantly pointed out that the Legislature had not "seen fit to extend preferential treatment with respect to transfer inheritance taxes to the issue of stepchildren, nor has the Legislature yet seen fit to permit either stepchildren or their issue to inherit property of a decedent dying intestate." The Legislature, when it enacted the 1953 Adoption Act, expressly conferred the same right of inheritance upon an adopted child as if he were a natural child. By so doing the Legislature has manifested an intention to extend preferential treatment with respect to transfer inheritance taxes to the legally adopted children of a child of the decedent.

The Bureau's assessment of the tax under *N. J. S. A.* 54:34–2, *subd. d,* rather than *N. J. S. A.* 54:34–2, *subd. a* is reversed.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, FRANCIS and PROCTOR—6.

*For affirmance*—None.