Argued July 22, reversed September 10, petition for rehearing
denied November 12, petition for review denied
December 15, 1970

IN THE MATTER OF THE ESTATE OF SANNI JALO, DECEASED

# DEPARTMENT OF REVENUE, *Appellant, v.*
# MARTIN, *Respondent.*

474 P2d 355

*Walter J. Apley*, Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Lee Johnson, Attorney General, and Richard A. Uffelman, Assistant Attorney General, Salem.

*William A. Martin*, Portland, argued the cause for respondent. On the brief were Davis, Jensen, Martin & Robertson, Portland.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

LANGTRY, J.

This is an appeal by the Department of Revenue from a judgment holding that an adopted child who received a substantial bequest in the will of her natural mother was entitled to the preferential treatment a "child" is accorded by Oregon inheritance tax laws.

The decedent released her daughter for an adoption which was regularly completed in the State of Washington in 1912. Subsequently, the mother and daughter established a close personal relationship. The adoptive parents had long since died. The Department of Revenue proposed to tax the devised inheritance at the rate applicable under ORS 118.100 (3), which is the rate for "other cases." It is much higher than the rate required by ORS 118.100 (1), for property which passes to a "grandparent, parent, spouse, child or stepchild or any lineal descendant of the deceased."

The circuit court interpreted ORS 118.100 (1) literally and held that the statute gave the preferred rate to a "child," holding that the meaning of the word as it is used in the statute is clear. The Department

of Revenue contends that the adoption and inheritance tax laws of the state should be construed *in pari materia,* and that the provisions of the adoption laws of Oregon make it clear that the legal rights and obligations of a child and parent, deriving from the parent-child relationship, are completely and for all purposes terminated upon the valid completion of an adoption of the child by someone else.

■■ We agree that the statutes must be construed together in order to give meaning to each of them, if that is possible. This rule of construction has often been applied in other kinds of Oregon tax and probate cases. *Standard Ins. Co. v. Tax Com.,* 230 Or 461, 370 P2d 608 (1962); *Kankkonen v. Hendrickson et al,* 232 Or 49, 374 P2d 393, 99 ALR 3d 296 (1962). The rule is simply stated in *State v. Powell,* 212 Or 684, 689, 321 P2d 333 (1958), "statutes treating of the same subject matter are to be construed together * * *."

In 1 Jauregny and Love, Oregon Probate Law and Practice 23, Descent and Distribution § 17 (1958), it is said:

"* * * [I]n 1953 another statute was passed to endeavor, insofar as legally possible, to give to the adopted child a status in all respects the equivalent of a natural child of the adoptive parents born in lawful wedlock and also to abolish the pre-existing status between the natural parents and the child. It provides that the effect of the decree of adoption
'shall be that the relationship, rights and obligations between an adopted person and his descendants and (a) his adoptive parents, their descendants and kindred, and (b) his natural parents, their descendants and kindred shall be the same to all legal intents and purposes after the entry of such decree as if the adopted per-

son had been born in lawful wedlock to his adoptive parents and had not been born to his natural parents.'

"The statute makes it clear that the rights referred to include rights of inheritance.[⊗]

"Although the objective of the statute is without doubt a desirable one, it should be noted that in one respect it deprives the adopted child of what in some instances may be a valuable right, that is the right to inherit from his natural parents and also from the kindred of those parents, who, of course, are his own kindred—or at least were prior to the adoption.

[⊗] *Laws 1953, ch. 650, now ORS 109.041, 111.212."*

The Department of Revenue cites the above language, and argues that the legislature has cut off all inheritance rights of the child from the natural parent, and it follows that with reference to inheritance matters, including taxes, the child is as a stranger to the natural parents. Therefore, construing the statutes together, the word "child" as used in ORS 118.100 (1) refers only to children who have not had their status as a child to the natural parent terminated by adoption.

We have found no case in point. Several cases construe inheritance taxation statutes as they apply to children of adopted children. In such cases the courts disagree as to whether such "grandchildren" of the adoptive parents are lineal descendants who are entitled to preferential inheritance tax rates. Each case appears to turn on the particular wording of the statutes involved. See Annotations, 51 ALR 2d 854 (1957); 141 ALR 1302 (1941); 98 ALR 190 (1935); and *In Re Wheatley's Estate*, 174 F Supp 868 (D VI 1959). In one such case, *In re Smith Estate*, 343 Mich

291, 299, 72 NW2d 287, 51 ALR 2d 847 (1955), the court said:

"We have foreborne a discussion of cases from other jurisdictions. Their study has revealed statutory dissimilarities to the extent that their worth as precedent is doubtful * *, *."

Our study leads us to the same conclusion, but we will briefly discuss two cases urged by counsel.

The Department urges *Palmer v. Kingsley*, 27 NJ 425, 142 A2d 833 (1958). The adopted children of decedent's natural child were held to be the "issue" of the natural child. The court considered the adoption statutes of the state *in pari materia* with the inheritance tax laws, and those statutes provided that an adopted child should have the same right of inheritance "as if such child were born to the adopting parent * * *." They also provided that in construing any testamentary document, an adopted child should be "deemed lawful issue" of the adopting parent unless otherwise provided by the terms of the document.

The estate urges, in support of its view, *Estate of Zook*, 62 Cal2d 492, 42 Cal Rptr 597, 399 P2d 53 (1965), and contends that it is in point. In that case the decedent's grandchildren had been adopted by a stranger to decedent. These grandchildren received bequests in decedent's will. The state sought to tax these bequests at the rate for non-relatives of decedent. The California probate code provided that for all purposes of succession by, from or through the adopting parent, an adopted child shall be deemed the descendant of the adoptive parent, as though he were the natural parent. It further provided that the adopted child does not succeed to the estate of a natural parent or a relative of the natural parent. The court de-

cided that the preferential tax treatment accorded to the lineal descendants of decedent should apply.

Part of the court's reasoning leading to its conclusion was that this result should apply particularly "where the testatrix [a grandmother] was not a party to the adoption and thus could not be deemed to have voluntarily or constructively severed her natural family bonds with the child * * *." 62 Cal2d at 495. The facts on which the ruling is based are not present in the case at bar. The California Supreme Court noted that the result in that case applied "where there are no statutory provisions which expressly compel or for good reason require that the adoption be recognized for inheritance tax purposes * * *." 62 Cal2d at 495-96. The court noted that the result it reached might, in some circumstances, provide a bonus for an adopted child who could get preferred inheritance tax treatment relating both to adoptive parents and natural parents. This was no obstacle to the decision.

Our examination of these and other cases is helpful only as to general rules of statutory construction. They indicate that there is no uniformity of decision in this type of situation.

We must interpret the Oregon statutes. An adopted child cannot inherit under the laws of descent and distribution from or through its natural parents. ORS 109.041, 111.212. *Alread v. Rickman et al*, 224 Or 216, 355 P2d 751 (1960); *Hood v. Hatfield*, 235 Or 38, 42, 383 P2d 1021 (1963):

> "By the first subsection of ORS 109.041 it is provided, in substance. that the relationship between an adopted child and his descendants on the one hand, and his adoptive parents and descendants and kindred on the other, is the same as if the

adopted child had been born in lawful wedlock to his adoptive parents and *had not been born to his natural parents.* [Emphasis theirs.] If the statute had stopped there, *the result* of the adoption by a stepparent who *is* the spouse of the natural parent would be, as in the case of other adoptions, *to sever all legal relationships whatever between the natural parent and the child * * *.*" (Emphasis supplied.)

ORS 111.212 (repealed in 1969 at the time of the adoption of the new probate code, but applicable in this case) provided that in applying the laws of descent and distribution of this state:

"* * * [T]he same effect shall be given to an adoption as it is set forth in ORS 109.041 irrespective of whether the adoption was granted heretofore or hereafter, and irrespective of whether the adoption was consummated in Oregon."

■ We construe the provisions of ORS 109.041 and ORS 111.212 together, and with the provisions of ORS 118.100 we conclude that the adoption left the legal relationship of decedent and her daughter as though the daughter had not been born to her. Hence, regarding the bequest to the daughter in her will, for inheritance tax purposes the daughter should be viewed as a stranger. The preferred rate applying to a child under ORS 118.100 (1) cannot be applied to the bequest. The objections of the Department to the tax proposed by the estate must be sustained.

Reversed.