## ROBERTA P. BARNUM *v.* DEPARTMENT OF REVENUE

William L. Dickson, Pozzi, Wilson & Atchison, Portland and Alexander Schneider, Schneider & Moultrie, Portland, represented plaintiff.

Walter J. Apley, Assistant Attorney General, Salem, represented defendant.

Decision on stipulated facts rendered for defendant on May 3, 1974.

CARLISLE B. ROBERTS, Judge.

Plaintiff appeals from the Department of Revenue's Order No. IH 73-2, assessing additional inheritance taxes resulting from plaintiff's classification as a "nonrelative" to the deceased, her natural father. Plaintiff prays that, though she was adopted, she be determined to be a "child" within the purview of ORS 118.100 (1) and thus saved from the collateral inheritance tax imposed by ORS 118.100 (3).

The facts are not in dispute. The plaintiff is the natural child of Leslie R. Palfrey, the deceased. While yet a minor, the plaintiff was adopted by another person. On July 20, 1972, Leslie R. Palfrey, a resident of Portland, Oregon, died testate in that city and by the terms of his will left a large and taxable estate to the plaintiff.

The sole issue for determination by this court is whether an adopted child who inherits through her natural parent is exempt from the collateral inheritance tax under the provisions of ORS 118.100 (1) which establish the classification of "child"; i.e., does a "child" continue to be the child of its natural parents for inheritance tax purposes, as well as the child of its adoptive parents?

ORS 118.100 (1) contains a statement of the rate of inheritance tax on any devise, bequest, legacy, gift or beneficial interest to any property or income passing to or for the use of any "grandparent, parent, spouse, child or stepchild or any lineal descendant of the deceased." ORS 118.100 (3) then stipulates the higher rates to be applied to persons who do not fit the categories listed in subsection (1) (ascendants or descendants) or (2) (collateral relatives).

ORS 109.041, under the chapter heading of "Rights and Relationships of Parent and Child," states:

"(1) The effect of a decree of adoption heretofore or hereafter granted by a court of this state shall be that the relationship, rights and obligations between an adopted person and his descendants and

"(a) His adoptive parents, their descendants and kindred, and

"(b) His natural parents, their descendants and kindred

shall be the same to all legal intents and purposes after the entry of such decree as if the adopted person had been born in lawful wedlock to his adoptive parents and had not been born to his natural parents."

ORS 118.005 (1), a part of the definition section of the inheritance tax chapter, refers to "legal adoption" without defining that term.

A cursory perusal of the two sections cited appears to present a case of latent ambiguity in the definition of the word "child" in ORS 118.100 (1). Human experience recognizes that a child may be "natural," "adopted," "foster," "stepchild," *inter alia,* and the fact that ORS 118.100 (1) refers to "child" and "stepchild" and ORS 118.005 (1) refers to "legal adoption" immediately creates ambiguity. Plaintiff's citation to *Methodist Book Concern v. St. Tax Com'n,* 186 Or 585, 208 P2d 319 (1949), lacks analogy. *Allen v. Multnomah County,* 179 Or 548, 173 P2d 475 (1946), is superior in that respect.

Since ORS 109.041 (1) (supplemented by ORS 112.175) appears to remove an adopted child from the definition of "child" of his natural parents, this court must decide whether such apparent removal may be

transferred from the domestic relations section of the Oregon statutes to the probate law section.

Initially, it is important to emphasize two barriers which the plaintiff must overcome. First, the burden is clearly on the claimant to prove the right to a tax exemption such as that granted in ORS 118.100 (1). *Unander v. U. S. Nat'l Bank et al,* 224 Or 144, 355 P2d 729 (1960). Second, the general rule involving tax exemption statutes is as stated in *Unander,* at 150:

> "It is a canon of universal recognition that tax exemption statutes will be strictly construed in favor of the state and against the taxpayer. It applies with equal force to inheritance taxes. * * *"

The Supreme Court has gone even farther in its statements regarding tax exemptions. The court in *Unander v. Pasquill et al,* 212 Or 213, 319 P2d 579 (1957), quotes *Allen v. Multnomah County, supra,* at 223:

> "* * * 'No exemptions should be allowed, therefore, unless they are plainly warranted, and the intent of the legislature to exempt must be clear beyond a reasonable doubt. * * * An intention to exempt will not be implied from language which is susceptible of *any* other reasonable interpretation.' * * *" (Emphasis supplied.)

Prefacing this quotation, the Supreme Court said that if there is even a doubt whether the legislature granted any deduction or exemption, the presumption is that the legislature did *not* so provide.

It appears that a very closely analogous case has been ruled on by the Oregon Court of Appeals in *Dept. of Rev. v. Martin,* 3 Or App 594, 474 P2d 355, Sup Ct *review denied* (1970). In that case the facts were as follows: The decedent released her daughter for an adoption which was completed in the State of Wash-

ington. Subsequently, the mother and daughter established a close personal relationship long after the adoptive parents had died. The Oregon Court of Appeals construed the provisions of ORS 109.041 and ORS 111.212 (repealed in 1969) together and, with the provisions of ORS 118.100, concluded that the adoption left the legal relationship of decedent and her daughter as though the daughter had not been born to her but rather born to the adoptive parents. Thus, the bequest to the daughter in the decedent's will was taxed as though the daughter were a stranger. A cursory examination of the *Martin* case would apparently place that case on all fours with the present litigation. The plaintiff in this suit, however, has attacked the holding in the *Martin* case as a perversion of required justice. Without attempting to distinguish *Martin* from the present situation, the plaintiff has attacked the fundamental premise on which the Court of Appeals based its holding.

While, on matters of taxation, the Court of Appeals is not necessarily superior to this court (from which appeals are taken directly to the Supreme Court), that court formerly heard appeals such as this and its holdings are matters of precedent when they involve issues of inheritance and gift taxation. Thus, the plaintiffs have, in addition to the burdens elucidated above, the additional burden of overcoming a very recent case which this court regards as generally precedential.

In a close examination of *Dept. of Rev. v. Martin, supra,* this court can find no factual or legal distinction between the two situations. Although ORS 111.212, subsequent to the factual setting of *Martin,* has been repealed, that section is not involved in the present

case since the infant's adoption was consummated within Oregon.

Finding no significant distinction between the *Martin* case and the present situation, the court must turn to the arguments of the plaintiff, submitted in carefully prepared briefs. A basic contention of the plaintiff is that ORS 118.100 (1) is unambiguous and, therefore, it should not be construed. For this proposition, the plaintiff cites ORS 174.010, which states, in part:

> "* * * [T]he office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted [in a statute]; * * *."

Speaking generally, the plaintiff's contention is correct; unambiguous statutes should not be construed. 2A Sutherland, *Statutory Construction* § 45.02 (4th ed 1973). See also *State v. Young,* 74 Or 399, 145 P 647 (1915). A corollary to this general rule is that, where the language plainly admits of no more than one meaning, the duty of interpretation does not arise. 2A Sutherland, *supra,* § 46.01. The case of *Methodist Book Concern, supra,* cited by the plaintiff, is easily distinguishable and not appropriate to the present case.

The perfunctory canon of ambiguity stated above does not, however, answer the present question. What is needed is not a reiteration of established principles but rather a definition of "unambiguous" for application in the present case. In an attempt to define ambiguity, the plaintiff has cited two cases, both inappropriately. Plaintiff cites the case of *Standard Ins. Co. v. Tax Com.,* 230 Or 461, 370 P2d 608 (1962), stating that the court "held that without ambiguity the Court is not 'permitted to interpret that which has

no need of interpretation.' " This quotation from the plaintiff's brief is an inaccurate statement of the holding of the *Standard Ins. Co.* case. In reality, the holding was as follows, at 465-466:

> "It is our conclusion that the exemption statute is not free from ambiguity * * * We realize that if we were to look at the statute with blinders on and see nothing more than the words written in that particular section our decision might be otherwise. But we think that we must look to the facts available to us *and to other statutes* which define and govern the organization and operation of the insurance companies named in the exemption statute. [citations]" (Emphasis supplied.)

The second case cited by the plaintiff is that of *Christianson v. Commission,* 2 OTR 43 (1964). The plaintiff's brief states that "the Court ruled that it could not depart from the plain meaning of the statute to construe it, unless the statute was ambiguous." It may be pointed out that the above-stated position was dictum rather than a ruling but to do so may be interpreted as quibbling. The real shortcoming of the citation to the *Christianson* case and the Tax Court's "ruling" (unmentioned by the plaintiff in her brief) is that the Supreme Court reversed the opinion of the Tax Court and specifically found ambiguity. *Christianson v. State Tax Com.,* 240 Or 504, 402 P2d 743 (1965).

Supplementing the general statement that unambiguous statutes should not be construed are various other well-accepted propositions of statutory interpretation. Section 45.02 of 2A Sutherland is cited above but also included in § 45.02 is the following, at 4:

> "* * * The assertion in a judicial opinion that a statute needs no interpretation because it is

'clear and unambiguous' is in reality evidence that the court has already considered and construed the act. It may also signify that the court is unwilling to consider matter or evidence bearing on the question as to how the statute should be construed, and is instead declaring its effect on the basis of the judge's own uninstructed and unrationalized impression of its meaning. Because issues as to what a statute means or what a legislature intended are essentially issues of fact, even though they are decided by the judge and not by a jury, a court should *never* exclude relevant and probative evidence from consideration." (Emphasis supplied.)

Furthermore, in § 46.07, Sutherland explores the limits of literalism. It is stated, at 65:

"The literal interpretation of the words of an act should not prevail if it creates a result contrary to the apparent intention of the legislature and if the words are sufficiently flexible to admit of a construction which will effectuate the legislative intention. The intention prevails over the letter, and the letter must if possible be read so as to conform to the spirit of the act. * * *"

Assembling the above discussions of ambiguity, applying them to the statute in the present case and examining the opinion in *Dept. of Rev. v. Martin, supra,* the statute, in relation to other pertinent statutes, is found to be sufficiently ambiguous to require interpretation and construction by this court. To find the statute unambiguous would require the court to completely ignore ORS 109.041 and, in addition, ORS 118.005 (1), which provides for the recognition of legal adoption. Plaintiff's quotation of ORS 174.010 should be completed by adding and giving effect to its last clause:

"* * * and where there are several provisions

or particulars such construction is, if possible, to be adopted as will give effect to all."

It is frequently stated that statutes are to be considered as in pari materia when they relate to the same person or thing, or to the same class of persons or things. 2A Sutherland, *supra*, § 51.03. Citing various cases, the author there states that when it has been held that the same subject is treated in several acts having *different* objects, the rule of in pari materia does not apply. This statement, however, is modified by further discussions of the author, at 298-299:

"* * * The guiding principle, however, is that if it is natural and reasonable to think that members of the legislature or persons to be affected by a statute, depending on whether legislative intent or meaning to others is taken as the criterion of decision, would think about another statute and have their impressions derived from it influence their understanding of the act whose effect is in question, then a court called upon to construe the act in question should also allow its understanding of it to be influenced by impressions derived from the other statute. In other words, for this purpose the subject or object of a statute should be defined in terms of the range of probable awareness and probable attitudes about relevance by legislators and others concerned with the statute's operation. * * *"

The discussion in 42 Am Jur 2d *Inheritance, Estate and Gift Taxes* § 34 (1969), appears to be nearly on point:

"Under the fundamental rule of statutory construction that all statutes in pari materia or relating to the same subject are to be construed together, inheritance tax statutes are to be construed together with statutes of descent and distribution, statutes concerning wills, *statutes concern-*

*ing adoption,* and statutes for the collection of privilege taxes." (Footnotes omitted; emphasis supplied.)

For the proposition that inheritance tax statutes should be construed together with statutes concerning adoption, the author cites *Palmer v. Kingsley,* 27 NJ 425, 142 A2d 833 (1958), discussed below.

In the case of *In re Frazier's Estate,* 180 Or 232, 177 P2d 254 (1947), the question was whether, upon the intestate death of an adopted child, unmarried and without issue, the heirs and next of kin of the adoptive parents inherit the estate. The court held that the adoptive father's second wife, who did not adopt the son, could not inherit from her husband's adopted son on his death. The court stated, at 239:

"We are to determine, then, whether, within the true intent and meaning of the above quoted sections of the statute, an adopted child is in a legal sense a relative for purposes of inheritance, not only of its adoptive parents, but as well of its adoptive parents' kindred. And, in considering that question, the *statute of adoption must be read into the statute of descent and distribution.* * * *" (Emphasis supplied.)

See also *Hood v. Hatfield,* 235 Or 38, 40, 383 P2d 1021 (1963); *Standard Ins. Co., supra.*

It is the opinion of this court that the relevant provisions of ORS chapters 111 and 118 may be read in pari materia to determine the outcome in the present case. ORS 118.005 (1) requires a reading of ORS 109.041 and 109.050 in pari materia.

Even if it should be held that the coupling of ORS chapters 111 and 118 is not mandatory, there is some authority for permitting the court to read "related"

sections together, although they are not in pari materia.

> "All of the statutes of the state can be said to be 'related' in the sense that they all comprise component parts of the state's entire legal system. The difference between statutes which are closely enough related to be regarded as in pari materia and those which are not is therefore only one of degree. The difference in degree is nevertheless one which can be rationalized and explained by reference to a meaningful principle. The difference has to do with the degree of specificity or generality with which the relationship between the statutes in question would be characterized. If they both, or all, pertain to the same particular subject with sufficient focus to make it reasonable to suppose that legislators and persons affected by one of them would call to mind the other or others when contemplating the one with which they are immediately concerned, and have their understanding of it influenced by their awareness of specific provisions in the other or others, then implications of the other provisions are entitled to be accorded the special weight that attaches to statutes in pari materia. * * *" (2A Sutherland, *supra*, § 53.02.)

■ Some confusion seems to have been wrought concerning the application of the concept of in pari materia to ambiguous statutes. It is this court's position that the concept of in pari materia was intended and does cover both patently and latently ambiguous statutes. Whereas the plaintiff alleges that the concept applies only to those statutes which are patently ambiguous, an investigation of in pari materia makes it apparent that the concept's most significant application involves those statutes which, like the present ORS 118.100 (1), are latently ambiguous.

It appears to the court that there is a paucity of

cases in point. Mention has been made of *Palmer v. Kingsley, supra.* In that case, the New Jersey Supreme Court was required to decide whether the adopted children of a daughter qualified as "issues of child" for preferential inheritance tax purposes. In a unanimous opinion upholding the preferential rate, the New Jersey Supreme Court stated, at 429:

> "It is a cardinal principle of statutory construction that statutes relating to the same or similar subject matter — statutes *in pari materia* — are to be construed together. *Sutherland, Statutory Construction (3rd ed.* 1943), § 5201. The phrase 'issue of any child' is used in the Transfer Inheritance Tax Act in relation to the transfer of property upon the death of the owner. While this statute does not purport to directly affect the legal principles relating to the transfer of property, it does refer to and deal with the entire body of the law relating to such transfers, since it imposes a tax upon all such transfers. * * * Our statutes concerning adoption, wills, descent and distribution and inheritance taxes, which comprise the body of our substantive statutory law regulating the transmission of a decedent's property, are *in pari materia* and should be construed together as constituting one coherent and integrated legislative system; each statute to be deemed explanatory of the other."

The statute under which the New Jersey Supreme Court made its ruling in *Palmer, supra,* is very similar to that of Oregon. The court pointed out that it was beyond the power of the legislature to determine that an adopted child *is* a natural child so it perforce was limited to the role of perhaps less dynamic, but, nevertheless, equally effective words to convey its intention; viz., granting an adopted child a status equal to that of a natural child. NJSA 9:3-30 of the Adoption Act then in effect (NJSA 9:3-17 to 36), the New Jersey

statute involved in the *Palmer* case, reads in relevant part:

"A. The entry of a judgment of adoption shall terminate all relationships between the child and his parents, and shall terminate all rights, duties, and obligations of any person which are founded upon such relationship, including rights of inheritance under the intestate laws of this State * * *.

"B. The entry of a judgment of adoption shall establish the same relationships, rights, duties and obligations between the child and the adopting parent as if such child were born to such adopting parent in lawful wedlock * * *."

The applicable tax statute, NJSA 54:34-2, was clearly separate from the above-quoted statute involving the relationships between a child and his natural and adoptive parents.

The plaintiff urges upon this court two California cases. The California Supreme Court held in an inheritance tax rate case, *In re Zook's Estate,* 62 Cal2d 492, 42 Cal Rptr 597, 399 P2d 53 (1965), that children of a natural son who had been adopted out were entitled, on inheriting from the natural grandparents, to the lower tax rate normally applied to natural grandchildren. The California Supreme Court in that opinion stated, at 494-496:

"Manifestly it cannot be said that our statutory scheme evinces a legislative intention that there be total correlation between probate law and taxation law. * * * If affection and regard remains between members of a natural family, the law should not in the name of consistency undertake to thwart the expression of those feelings when the encouragement thereof does not hinder the adoptive relationships. * * *

"* * * * *

"* * * Surely a distinction here exists sufficient to justify tax treatment as in the absence of adoption where there are no statutory provisions which expressly compel or for good reason require that the adoption be recognized for inheritance tax purposes. * * *"

A problem immediately arises when one attempts to analogize the *Zook* case to the present situation since, at the time of the *Zook* decision, the California statutory framework arguably did not cover the situation in that case. See Cal Civ Code §§ 228 and 229 (West 1954) ; Cal Prob Code § 257 (West 1956) ; and Cal Rev and Tax Code § 13307 (West 1956).

A short commentary on recent developments in 18 Stan L Rev 494 (1966), dealing with the *Zook* decision, is cited by the plaintiff as requiring the plaintiff's desired result in this case. The premise of that comment is that a total substitution policy in the intestate succession cases is inapplicable to the bequest and tax situations, thereby justifying the court's continued recognition in *Zook* of the blood ties between the adoptee and his natural family for tax purposes. The comment admits the *Zook* case as a special situation when it states, at 505, "total substitution may be a valid rule with respect to placement adoptions." A comment, in the same paragraph, qualifies this, however, by stating that the *Zook* decision should apply to adoptions in which continued contacts between the adopted child and the natural family are very likely to continue to exist.

The basic premise on which the *Zook* decision is based is untenable for purposes of Oregon application. That premise is that if, and only if, a relationship continues between the natural relatives and the adopted

child, the adopted child should, upon inheriting from the natural relatives, be granted an exemption from the collateral tax (in effect, a lower tax rate usually reserved for natural children). It is believed the *Zook* decision was a victory of emotion over logic since any such rule formation is inherently impossible to apply to the great majority of cases.

The second case urged upon this court is that of *In re Estate of Cottrell*, 15 Cal App3d 88, 92 Cal Rptr 923 (1971). In that case, the decedent's daughter had been adopted by the decedent's parents. The state claimed the daughter was a "stranger" for purposes of the fixing of the inheritance tax rate on a bequest. This case could also be distinguished on its facts; however, the court believes such distinction is not necessary since the decision is probably unwarranted and should not be followed in Oregon. The Court of Appeals of California, in the *Cottrell* case, appears to have been the site of a last-ditch stand of the emotionalists prior to the enactment of Cal Rev and Tax Code § 13310 (West 1970) (added by Stat 1969). That code section states:

> "In determining the classification of a transferee of any class for the purposes of this part, children adopted in conformity with the laws of this state while under the age of 21 years are deemed to be natural children of their adoptive parents and to be unrelated to any natural parent who has been replaced by the adoption. * * *"

This code section, as stated, was not in effect at the time of the deaths of the decedents whose estates were the subjects of the *Zook* and *Cottrell* decisions. Had it been in effect, it clearly would have covered the situations. Its later enactment clarifies the California legis-

lature's position with respect to *Zook* and *Cottrell*. It accomplishes the result which this court finds in the required reading of ORS 118.005 (1) and ORS 109.041 and 109.050.

While the above distinctions, involving the *Zook* and *Cottrell* cases, may not be deemed satisfactory by some proponents of extended tax exemptions, this court need not, and does not, recognize those cases as authority for a decision in the present situation. *Dept. of Rev. v. Martin, supra,* at 599. Eliminating the difference in statutory framework, this court believes the *Zook* and *Cottrell* decisions were emotionally rather than legally researched.

One further point must be considered. The plaintiff's opening brief states, at 12:

"* * * In Volume 18 of the Stanford Law Review, beginning at page 494, appears an interesting discussion of recent developments in the California law on the subject with which we are concerned and the author concludes 'that if the rule announced *In re Cottrell* (1971) (supra) is to be changed, it should be by an amendment to the tax statute itself.' "

The court was unable to find this quotation and since the law review article is dated 1966 it is likely that the quotation is not contained therein.

The plaintiff alleges that a holding by this court that the relevant statutes are in pari materia would be, in effect, a statement that the enactment of ORS 109.041 was a revenue raising measure and did not originate in the lower house of the legislature as required by Oregon Constitution, Art IV, § 18. It is sufficient, to counter such an allegation, to cite two

authorities. 1 Sutherland, *Statutory Construction,* §
9.06, states, in part:

> "The general tendency favors narrow construc-
> tion of what constitutes a revenue bill which must
> originate in the lower house. There is general agree-
> ment, for example, that the constitutional provision
> does not apply to bills which serve other primary
> purposes and only incidentally produce revenue.
> * * *"

It is relatively easy for this court to find that the
enactment of ORS 109.041 was not primarily for the
purpose of raising revenue.

Likewise, the Oregon Supreme Court in *Northern
Counties Trust v. Sears,* 30 Or 388, 41 P 931 (1895),
citing *The Nashville,* 4 Biss 188 (Fed Cas 10023),
states, at 402:

> "* * * 'It is certain that the practical construc-
> tion of the provision by congress has been to con-
> fine its operation to bills, the direct and principal
> object of which has been to raise revenue, and not
> as including bills out of which money may inciden-
> tally go into the treasury, or revenue incidentally
> arise.' * * *"

The court in *Northern Counties Trust* cites *Mumford
v. Sewall,* 11 Or 67, 4 P 585 (1883), involving an exemp-
tion and the allegation of unconstitutionality. The
court stated, at 403, that:

> "* * * because it was not sufficiently clear that
> a law which merely declared that certain property
> theretofore exempt should thereafter be subject to
> taxation was strictly a law for raising revenue [the
> court did not feel warranted in declaring it uncon-
> stitutional]. * * *"

■ The plaintiff's contention that a denial of
the exemption would be a violation of the U. S. Con-
stitution, Amend XIV, due process and equal protec-

tion clauses, need be answered only by citing *In re Estate of Heck,* 120 Or 80, 250 P 735 (1926). The Oregon Supreme Court in that case stated, at 88:

"The constitutional provision that citizens shall not be denied 'equal protection of the laws' does not mean exact equality of taxation. Since the power is vested in the state to select and classify objects of taxation, the exercise of such power must necessarily be more or less arbitrary. The human mind has never yet been able to devise a scheme of taxation which operates with perfect equality. * * *"

See also 18 Stan L Rev, *supra,* at 502, in which the author admits that the results in the case of *In re Zook's Estate, supra,* provide a double exemption for a select few, which appears on its face to be poor policy, to be upheld only if the statute's construction is free from doubt.

It is the conclusion of this court that ORS 118.100 (1) and 109.041 (1) must be read in pari materia. Reading the statute as such, this court is required to follow the Oregon Court of Appeals in the case of *Dept. of Rev. v. Martin, supra,* and hold that the plaintiff be denied an exemption from the collateral tax imposed on nonrelatives of the deceased. While the argument has been made by plaintiff that the legislature disapproved the results in the *Martin* case by failing to amend any of the relevant statutes in its next session, such an argument appears specious. Any change from the result in the *Martin* decision, a significant precedent to the decision in this case, *must* come from the legislature and not from the courts.

The court affirms the order of the defendant Department of Revenue and holds that the plaintiff is liable for the tax as imposed by ORS 118.100 (3).